# DAY v. FAIR HAVEN AND WESTVILLE RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 35. Argued October 23, 24, 1889. — Decided November 11, 1889.

The fourth claim in the reissued letters patent No. 8388, granted August 27, 1878, to Augustus Day for an improvement in track clearers, *viz.*, " The combination with the draw-bar C and scraper A of the diagonal brace E, as and for the purpose set forth," would naturally suggest itself to any mechanic, and involves no patentable novelty.

A claim in letters patent must be held to define what the Patent Office has determined to be the patentee's invention, and is not to be enlarged in construction beyond the fair interpretation of its terms.

In EQUITY for the infringement of letters patent. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

*Mr. Charles J. Hunt* for appellant.

*Mr. William Edgar Simonds* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Augustus Day filed his bill in equity against the Fair Haven and Westville Railway Company in the Circuit Court of the United States for the District of Connecticut, alleging an infringement of the fourth claim of reissued letters patent No. 8388, dated August 27, 1878, for an improvement in track clearers.

The defence was that the claim lacked patentable novelty, unless construed to contain parts not mentioned in it, and if so construed, then that there had been no infringement. The Circuit Court, Shipman, J., decided, that the claim did not cover patentable novelty, *Day* v. *Fair Haven &c. Railway*, 23 Fed. Rep. 189, and dismissed the bill accordingly, and from this decree the cause was brought to this court by appeal.

So much of the specification as is necessary to be quoted here states that:

" The nature of this invention relates to an improvement in the construction of railway-track-cleaning devices and the means of operating them, being more especially designed to be attached to horse-cars for the purpose of removing snow, ice, mud and other obstructions from the rails and immediately at the sides thereof; and it consists *in the combination of a pair of independently acting scrapers, pivotally secured to the floor of a car, and resting upon the track, when in operation, wholly by their own weight, with means for raising and lowering such scrapers simultaneously ; in the combination, with an independently acting scraper resting, when in operation, wholly by its own weight upon the track, of a draw-bar in the direct line of draft and a supplementary and diagonal draw-bar, which at the same time acts as a brace, the forward ends of both of said draw-bars being secured on the same axial line ;* in the peculiar construction and arrangement of a cast-shank with relation to the scraper, which is secured thereto, and the draft-irons, which connect it to the under side of the car; in the pendent guards, which lift the scraper from the track on meeting with an obstruction on the outside of the rail, and deflect outwardly

from the track, and in a peculiar crank for operating the shaft which raises and lowers the pair of scrapers at each end of the car, as more fully hereinafter set forth.

" In the drawing, A represents my scraper, being a plate of sheet metal of the form shown, slightly curved in cross-section. The front end of this scraper is rounded off at its lower edge, as shown in the drawings, to allow it to pass, without jar or danger of breaking, over the ends of rails that may be projected above the plane of the adjacent rails. The lower edge of the rear part of the wing of the scraper is cut away, as shown, to allow it to pass over pavement or earth at the side of the track which projects above the rail, thereby preventing such projecting matter from lifting the scraper proper from the face of the rail. B is the shank, to which it is secured by the bolts $a\ a$. This shank is a casting in the form shown in Fig. 2. It is formed with a pair of longitudinal ribs, $b$, on top, to receive the end of the draw-bar, C, whose other end is pivoted to a hanger, D, pendent from the car; or it may be pivoted directly to the sill of the car.

"The shank is also fitted or cast with diagonal studs $c$ on top of said ribs $b$ to receive the outer end of a diagonal brace, E, whose other end is pivoted to a hanger, D', parallel with the hanger D, but near the longitudinal centre of the car, *both draw-bar and diagonal brace being thus pivoted on the same axial line, so that when it is desired to raise and lower the scrapers, the same will be done without disturbing the vertical position thereof with relation to the track, as would be done were there but one pivotal point.* While the scraper and the parts to which it is attached are free to move in a vertical plane, this brace E effectually resists any lateral pressure to which the scraper may be subjected in moving obstructions from the rail, its own weight being sufficient to keep it down on the rail. The draw-bar and brace are securely bolted to the shank, and by the described arrangement of the ribs and studs perfect accuracy in the 'set' of the scraper is secured — an essential feature of my invention."

The claims were nine in number, of which the first four are as follows :

"1. In a railway car, a pair of independently acting scrapers, pivotally secured to the floor of the same, and resting upon the track, when in operation, wholly by their own weight, in combination with means for raising and lowering such scrapers simultaneously, substantially as and for the purpose set forth.

"2. In a track-cleaning device, the combination, with an independently acting scraper, resting, when in operation, wholly by its own weight upon the track, of a draw-bar in the direct line of draft, and a supplementary and diagonal draw-bar, which at the same time acts as a brace, the forward ends of both of said draw-bars being secured on the same axial line, substantially as and for the purpose set forth.

"3. The construction and arrangement of the shank B, as described, with relation to scraper A, draw-bar C, and diagonal brace E, as and for the purposes set forth.

"4. The combination, with the draw-bar C and scraper A, of the diagonal brace E, as and for the purpose set forth."

But it was stipulated that the complainant did not seek to recover except under the fourth claim.

The original patent, No. 125,547, was granted April 9, 1872, and the original specification did not contain the words italicized above, nor the first and second claims.

Upon the hearing, the complainant adduced the evidence of certain expert witnesses, who testified, on cross-examination, in substance, that the draw-bar C performed the office of drawing the scraper along the track, and was assisted in so doing by the diagonal brace E, which brace also performed the office of preventing the scraper from being removed from the track by the side thrust; that while the diagonal brace assisted in the direct draft, yet its most important function was to prevent the lateral movement of the scraper from the track; that, in considering the office performed by the draw-bar C and brace E, that office was the same if they were attached to any scraper in any way, provided an attachment was made; that so far as the fourth claim of the reissue was concerned, it was not material how the draw-bar and brace were pivoted, except that the pivoting should be on "the same axial line," so "that when the

scraper is lifted from the track it shall not be moved laterally in either direction."

As already stated, the fourth claim is : "The combination, with the draw-bar C and scraper A, of the diagonal brace E, as and for the purpose set forth."

Inasmuch as the scraper and draw-bar were both confessedly old, and the primary function of the diagonal brace is manifestly to prevent lateral displacement, the question, assuming that it is the diagonal brace only which is claimed to be new, is whether the application of a diagonal brace to a track-scraper to prevent lateral displacement involves patentable novelty. And this question must be answered in the negative; for we concur with the Circuit Court that the employment of a brace to effect that purpose would naturally suggest itself to any mechanic, and that its use in that way is within the range of common knowledge and experience. Considered aside from the method of the combination of the parts and the manner of pivoting, the contrivance is a well-known one of obvious suggestion, and used here to perform an office exactly analogous to that in which it has been frequently formerly used.

But it is contended on behalf of appellant that, as the combination would be inoperative "for the purpose set forth," namely, clearing the track of a railway of obstructions such as snow, ice, mud, etc., unless the bottom of the car were treated as part of such combination, the peculiar method of pivoting the draw-bar and the diagonal brace must also be included.

The mechanism by which the draw-bar and the diagonal brace are pivoted to the car and fastened to the scraper is not referred to in this claim, although it is in other claims of the series. As the claim must be held to define what the Patent Office has determined to be the patentee's invention, it ought not to be enlarged beyond the fair interpretation of its terms. It is true that elements of a combination not mentioned in a claim may sometimes be held included, in the light of other parts of the specification, which may be applicable, but here the claim is so broad that we are not justified in importing into it an element which would operate to so enlarge its scope as to cover an invention in no manner indicated upon its face.

As therefore the diagonal brace to enable the scraper to be kept in its place on the track, is the only element of the combination which is claimed to be new, and that involves no patentable novelty, the decree must be

*Affirmed, and it is so ordered.*