HAUGHEY *v.* LEE *et al.*

*(Circuit Court, E. D. Pennsylvania. May 9, 1890.)*

PATENTS FOR INVENTIONS—INVENTION.
   The claim of patent No. 379,644, of March 20, 1889, was for an "interfering device," to be placed around a horse's leg to protect it from contact with the hoof of the other leg, and to widen the stride, consisting of the pendant of "suitable material, loosely jointed to the strap passing around the leg of the horse." Devices for this purpose were old, and had been constructed in the form of a strap with leather loops, forming "strikers,"—*i. e.*, the part adapted to hit the other hoof,—attached, standing out horizontally towards the other leg, and of a pliable material wound round the leg with the ends inside, and projecting horizontally towards the other leg, to form the "striker." A strap having a pendant had been attached to the leg of horses to prevent stall kicking. *Held*, in view of the state of the art, no invention was shown in changing the position of the "striker" from a horizontal to a pendent position.

Bill in Equity by Michael Haughey to enjoin Lee & Sons from infringement of patent granted to complainant for interfering device for horses.

*E. J. O'Brien* and *Edward P. Bliss*, for complainant.
*Ernest Howard Hunter*, for respondents.

BUTLER, J. The plaintiff sues for infringement of patent No. 379,-644, dated March 20, 1889,—"interfering device for horses." The claim is as follows:

"The interfering device, consisting of the pendant made of rubber, wood, or other suitable material, loosely jointed to the strap passing around the leg of a horse, substantially in the manner shown, and for the purposes set forth."

The answer attacks the patent, and denies infringement. To support the former appeal is made to the state of the art. From this source it appears that interfering devices are of great antiquity, and of various forms, all having the same object,—protection of the leg, and spreading the stride. One of the earliest was the "boot," made of leather or other pliable substance, padded, and fitted to the leg,—the main purpose of which was to protect the leg. Even this, however, was supposed to exert some influence on the step. Following it came various other contrivances, the dominant object of which was to produce a wider step,—called "spreading." All these devices are still employed. Some consist of a strap strung with balls of wood, gum, or other similar material, made to buckle around the leg, above or below the pastern-joint. These balls stand out a little further than the "boot." Others consist of a strap with leather loops attached to the outward side, two to five inches long. These loops at first are stiff, standing out horizontally, and are struck more readily than the "boot," or balls. After a little use the loops hang, though not perpendicularly. Others are made of bands of platted straw, of gum pipe, and similarly pliable substances, and so fitted to the leg that the two ends form a "striker." It is unnecessary to extend the enumeration. The object in all cases is to protect the leg, and induce a wider step. By this means it is sought to cure the vice of interfering. The projection on the strap is called a "striker." A strap with pendent chain, or rope, has long been used to prevent kicking in the stall. This is attached to the leg in the same manner as the other devices. The chain is of various lengths, usually a foot or more.

The defendant has also shown, (if the testimony is credible,) the use of an interfering device made of a strap and pendent striker, loosely hung. The witnesses testify to having seen it used at a race-course near Norristown. One witness testifies to having seen a similar device,—the pendant being of gum or wooden balls,—at the stable of Mr. Hitner, in the same vicinity. One witness, a harness-maker, in Philadelphia, testifies that he assisted to make a number of similar devices, for a farrier, the strikers of which consisted of gum pipe—illustrated by an exhibit in proof. Another testifies that he saw these in the shop-window when made. The witnesses who testify to the devices used near Norristown, speak of a period 20 years past; and the same is true of the witnesses who testify to the Philadelphia device. The plaintiff called a number of persons, familiar with the general subject, who say they never saw any such devices. This does not, however, disprove their existence. I should hesitate to disregard the testimony of the plaintiff's witnesses, or to accept the suggestion that these devices were experiments

merely. Yet I would hesitate to declare the patent invalid on this testimony. The case may be put on safer ground. In view of the other devices shown—about whose existence there is no question,—it seems clear that the slight change in form which the plaintiff made did not require invention. He simply altered the "striker" from a horizontal to a perpendicular position. He found it standing out laterally, and loosened it so as to hang. This was all. Surely no invention was required to do it. Any mechanic to whose line the work belonged (or indeed any handy person, though not a mechanic) could do this. The idea or conception that this change might be beneficial, was not patentable. The question is simply, was invention required to make the change? In my judgment it was not. The kicking device exhibited a method of doing it. This device indeed required nothing but shortening the chain to make it correspond in every essential respect with the plaintiff's. Applying this to a horse in motion, instead of one standing in his stall, is not even a new use. If new it would be analogous to the old. Patents are constantly overturned for want of invention, where its absence is not so clear. The later volumes of reports are full of such cases; eight are contained in the last issue—132 U. S. It is sufficient to cite a few of them. *Hollister* v. *Manufacturing Co.*, 113 U. S. 59, 5 Sup. Ct. Rep. 717; *Thompson* v. *Boisselier*, 114 U. S. 1, 5 Sup. Ct. Rep. 1042; *Pennsylvania R. Co.* v. *Locomotive Engine Safety Truck Co.*, 110 U. S. 490, 4 Sup. Ct. Rep. 220; *Bussey* v. *Manufacturing Co.*, 110 U. S. 131, 4 Sup. Ct. Rep. 38; *Gardner* v. *Herz*, 118 U. S. 180, 6 Sup. Ct. Rep. 1027; *Weir* v. *Morden*, 125 U. S. 98, 8 Sup. Ct. Rep. 869; *Holland* v. *Shipley*, 127 U. S. 396, 8 Sup. Ct. Rep. 1089; *Aron* v. *Railway Co.*, 132 U. S. 84, 10 Sup. Ct. Rep. 24; *Day* v. *Railway Co.*, 132 U. S. 98, 10 Sup. Ct. Rep. 11; *Roemer* v. *Bernheim*, 132 U. S. 103, 10 Sup. Ct. Rep. 12; *Watson* v. *Railway Co.*, 132 U. S. 161, 10 Sup. Ct. Rep. 45. It is said by some of the plaintiff's witnesses that his striker taps the leg to which it is attached, as well as the other, and his counsel urge this as important. The specifications say nothing about it, but ascribe the device's superiority to the fact that it strikes the opposite leg, by a "swinging tangential motion." The claim also is silent on the subject. The counsel (as we understand) concede that the device would be old but for the capacity to perform this additional function. If that is true the patent is clearly void, because the claim embraces devices that will not perform it; and is therefore too broad. But aside from this, the tapping of the leg referred to, is unimportant. Every device used strikes and rubs the leg to which it is attached. Whenever the projection is hit by the opposite leg the blow is communicated to the other. The effect must necessarily be similar to the supposed tapping. I would rather sustain the patent than overturn it, (I feel this inclination in all cases,) but the proofs will not allow me. The bill must be dismissed, with costs.