WESTINGHOUSE ELECTRIC & MFG. CO. v. DAYTON FAN & MOTOR CO.

(Circuit Court, S. D. Ohio, W. D.  February 6, 1901.)

No. 5,288.

PATENTS—INVENTION—ELECTRO-MAGNETIC MOTORS.

The Tesla patent, No. 401,520, claim 1, which describes a method of operating synchronizing motors, by which, through changes in the circuit connections, such a motor may be converted at will into a double-circuit motor, to enable it to start itself, discloses invention, and is valid. Also, *held* infringed.

In Equity. Suit for infringement of patent. On final hearing.

Kerr, Page & Cooper, for complainant.

Albert H. Walker, for defendant.

THOMPSON, District Judge. This suit is brought to enjoin the defendant from further infringing letters patent No. 401,520, for a method of operating electro-magnetic motors, and to recover damages, etc., for past infringements. The defendant denies the infringement charged, and claims that the letters patent are void for want of invention. At the hearing the complainant asked leave to amend the bill by alleging that the defendant has infringed the letters patent by manufacture and sale as well as by use. The prayer of the bill, the denials of the answer, and the evidence, including the admissions of the defendant, cover the case sought to be made by the amendment, and no prejudice, therefore, to the defendant's rights will be caused by its allowance; and for that reason, and because the omission of the amendatory matter from the bill was inadvertent, the leave will be granted.

The infringement complained of relates only to claim 1 of the patent, which is as follows:

"The method of operating an alternating current motor herein described, by first progressively shifting or rotating its poles or points of greatest attraction, and then, when the motor has attained a given speed, alternating the said poles as described."

It is said that the method described in this claim consists of the combination of two modes of operation, both of which are old and well known, and that in view of the prior art their combination in one motor did not require invention, but simply the exercise of ordinary skill; for the combination, as a means of attaining the advantages sought, was so obvious that it would occur to the mind of any one skilled in the art, and would not require the exercise of the processes of invention to discover it. The state of the prior art, so far as it concerns the controversy here, and the character of the invention, is sufficiently set forth in the specifications of the patent as follows:

"As is well known, certain forms of alternating current machines have the property, when connected in circuit with an alternating current generator, of running as a motor in synchronism therewith; but, while the alternating current will run the motor after it has attained a rate of speed synchronous with that of the generator, it will not start it. Hence, in all instances heretofore where these 'synchronizing motors,' as they are termed, have been run, some means have been adopted to bring the motors up to synchronism with the generator, or approximately so, before the alternating current of the generator is applied to drive them. In some instances mechanical appliances have been utilized for this purpose. In others special and complicated forms of motors have been constructed. I have discovered a much more simple method or plan of operating synchronizing motors, which requires practically no other apparatus than the motor itself. In other words, by a certain change in the circuit connections of the motor I convert it at will from a double-circuit motor, or such as I have described in prior patents and applications, and which will start under the action of an alternating current, into a synchronizing motor, or one which will be run by the generator only when it has reached a certain speed of rotation, synchronous with that of the generator."

The invention does not lie in the mere mechanical changes in the circuit connections of the motor, but, in connection therewith, must

be found in the conception of the idea of making these changes to secure the advantages sought. It is contended that all Tesla had to do "after the issuance of his patent, No. 382,279, in order to make his motor of that patent operate on the method of claim 1 of the patent in suit," was to pull one of its wires out of its binding post while the motor was running, and that this was such a simple thing to do that to attribute the doing of it to the creative faculty of invention would be absurd. But this contention, as counsel for the complainant well say, ignores the real problem—

"Namely, how to endow a single-phase motor with a capacity which it did not before possess, and the absence of which practically destroyed its usefulness. From that point of view the two-phase motor was not considered at all. It was a perfect machine of wide capacities, and there was no reason for turning it into a machine of limited capabilities. But the idea of so reorganizing the single-phase motor as to give it the elements of a two-phase motor, and at the same time preserve within it the elements of a single-phase motor, was constructive and beneficial, and a very different thing from the mutilation of a two-phase motor, resulting in the production of a defective and uncommercial form of single-phase machine. The latter step would have been retrogressive, and would not have led to the utilization of a single-phase motor."

Prior to the issuance of the letters patent in suit, the single-phase alternating current motor, which required but one circuit, was highly efficient when running at speed, and for many purposes would have been preferable, but for the lack of the capacity of self-starting. This defect greatly impaired its value commercially, and offered a strong inducement to inventors and those skilled in the art to supply the lacking capacity. But, notwithstanding the state of the art, and all its teachings, and the obviousness of the remedy now suggested, it remained for Tesla to solve the problem. Thomson did not do it, although he had the question of "suitable devices for bringing the armature" up to "full speed, or a speed almost synchronous with the rate of alternations supplied," before him, when considering the invention of his patent, No. 407,844, the application for which was filed three months before the filing of the application for the patent in suit. Notwithstanding its suggested obviousness, there is no evidence that the method of claim 1 of the patent in suit occurred to any one other than Tesla until after the patent was applied for. But in the light of the teachings of the patent it has since occurred to the defendant, and is embodied in the device offered in evidence as "Complainant's Exhibit, Defendant's Motor, B. B. Exr." In view of the prior art, the admitted and the undisputed facts of the case, claim 1 of the patent should be sustained, and the defendant should answer for the infringement thereof. There will be a decree accordingly.