CUTLER-HAMMER MFG. CO. v. UNION ELECTRIC MFG. CO. et al.

(Circuit Court, E. D. Wisconsin. June 2, 1906.)

1. PATENTS—VALIDITY—INSERTION OF NEW CLAIM IN APPLICATION.

The fact that a new claim was inserted in an application for a patent by the attorney for the applicant without any new oath does not render the patent invalid as to such claim, where it was within the invention described in the specification.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 142, 152.]

2. SAME—MISTAKE IN DRAWING.

The drawings of a patent are addressed to those skilled in the art, and must also be considered in connection with the claims and specification and with each other; and a patent is not invalidated by a clerical mistake in a drawing, which, when so considered, would not mislead one skilled in the art to which it relates.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 140.]

3. SAME—INFRINGEMENT—ELECTRIC SWITCH FOR MOTORS.

The Blades patent, No. 418,678, for an electric switch for motors, was not anticipated, and discloses patentable invention. Claims 1 and 4 also *held* infringed by the device of the Keeney and Rhine patent, No. 777,637, which, while it may embody improvements, contains the material features of the earlier patent.

4. SAME—CONTRIBUTORY INFRINGEMENT.

A defendant which manufactures and sells certain elements of a patented combination with intent that they shall be used as a part of the full combination, as well as in other combinations, is chargeable with contributory infringement in so far as its sales are for use in the patented combination.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 402. Contributory infringement of patents, see note to Edison Electric L. Co. v. Peninsular Light, P. & H. Co., 43 C. C. A. 485.]

5. SAME—INVENTION—ELECTRIC RESISTANCE COIL.

The Baker patent, No. 368,807, for an electric resistance coil, is void for lack of patentable novelty and invention.

In Equity.

This is a final hearing in equity. Complainants by their original bill allege exclusive ownership of two certain letters patent of the United States, Nos. 418,678 and 368,804, for former, known as the "Blades Patent," being for an electric starting box or rheostat, and the latter, known as the "Baker Patent," being for an electric resistance coil, which two devices are capable of conjoint use in the same structure, and complainant avers that it employs and associates the same in a single unitary mechanism; that the defendants habitually employ both such patents in such conjoint use in its devices which it has put upon the market, and has thus infringed the claims of both such letters patent. The prayer of the bill is for an accounting and injunction. The answer denies that there is patentable novelty or invention involved in either of such patents, and many references to the prior art are cited whereby it is claimed that both such patented inventions have been anticipated. Infringement is also specifically denied as to both patents. Defendants admit the manufacture and sale of certain electric rheostats, but claim protection under United States letters patent No. 677,360, granted July 2, 1901, and No. 701,012, issued May 27, 1902, to the defendant Union Electric Manufacturing Company as assignor of Defendant Brown and Rhine. By supplemental bill the complainant sets up that in 1900 this complainant and the Cutler-Hammer Manufacturing Company of Illinois, to whose assets, rights, and interests the complainant has succeeded, commenced a suit in equity in

the United States Circuit Court for the Northern District of Illinois against Edward W. Hammer and Edward R. Harding for the infringement of United States letters patent No. 418,678 ; that such suit was vigorously defended in such court, and on the 31st day of March, 1903, a final decree was entered in favor of complainant, which decree is set out in hæc verba ; that an appeal was thereupon taken by said Harding and Hammer, defendants therein, to the Circuit Court of Appeals for the Seventh Judicial Circuit, which appeal was prosecuted, and resulted in an affirmance of such decree ; that such decree of said appellate court is still in full force and effect as a final adjudication in said cause.    General acquiescence of the public is also set out, and a large number of firms and corporations are named who have settled with complainant, and acquiesced in and agreed to respect such letters patent.    Insolvency of defendants is set up, and, so far as the defendant Union Electric Manufacturing Company is concerned, such averment is admitted by the defendant.    In June, 1904, complainant moved the court for a preliminary injunction pendente lite to restrain infringement of letters patent No. 418,678, and thereupon, on the 13th day of June, 1904, such preliminary injunction was granted.    On the 21st day of December, 1904, a second supplemental bill was filed by complainant, setting up that since the granting of such preliminary injunction defendants had abandoned the manufacture and sale of the starting-box that they had formerly made ; that in lieu thereof defendants were manufacturing and selling a new form of motor starter of somewhat different type, which, however, is alleged to be an infringement of both the Blades and the Baker patents ; that such new form of motor starter employs both such patents conjointly in one and the same structure.    The defendants answered the supplemental bill, admitting the abandonment of the former type of motor starter, alleging that the new device is entirely different in form, design, and mechanical construction from that theretofore made by defendants, and that the same does not infringe either of the letters patent of complainant ; that such new device was not sold or used prior to January, 1904, or prior to the commencement of this suit.    Replication by complainant.

Jones & Addington, for complainant.
Benedict & Morsell, for defendants.

QUARLES, District Judge (after stating the facts).    This suit involves the validity of two distinct patents.    The testimony taken is very voluminous, as the prior art in both fields has been thoroughly explored.    The arguments of counsel on both sides have been able and exhaustive.    The briefs are more like treatises on the electric art.

We will first consider complainant's letters patent No. 418,678, which will be for convenience hereafter designated as the "Blades Patent."    Claims 1 and 4 of this patent are alone in controversy.    Such claims are in the words and figures following, to wit :

"(1) In a shunt-wound electric motor, the combination, with the field circuit, of a magnet in the said circuit, a hand-switch adapted to open and close the armature circuit, said switch arranged to be held in its closed position by the magnetism of the said magnet, and means for automatically retracting the said switch to its initial position when the magnet is de-energized by the cessation of the current through the field circuit, substantially as described."

"(4) In a shunt-wound electric motor, the combination, with the field circuit, of a magnet in said circuit, a hand-switch adapted to open and close the armature circuit, said switch arranged to be held in its closed position by the magnetism of the said magnet, and a spring for automatically retracting the said switch to its initial position when the magnet is de-energized by the cessation of the current through the field circuit, substantially as described."

With reference to the issue of patentable novelty and invention, the consideration first in point of time and importance is to what extent

this issue has been foreclosed by the decision of the Circuit Court of Appeals in the Harding-Hammer Case, 128 Fed. 730, which involves the same patent. The doctrine of res judicata has been urged upon the court, but it is clearly inapplicable, because the parties are not the same. The maxim stare decisis has been invoked, but that relates to decisions in the same or some co-ordinate tribunal. But the duty under which this court rests to follow the authority of the Circuit Court of Appeals of this circuit is imperative and obvious, without reference to any of the legal maxims. Its interpretation is the law so far as this court is concerned. If the facts differ, the lower court must inform itself as best it may, by inspection of the record and briefs, or by statement of counsel who participated in the cognate case.

Westinghouse El. Manufacturing Co. v. Stanley Co., 133 Fed. 172, 68 C. C. A. 523. Therefore, I must start out with this basic proposition as laid down by the Circuit Court of Appeals, when considering the patent in suit:

"The prior art contains no equivalent combination. We think there was patentable novelty in the application of an under load retaining magnet to a manual starting-box, in the location of such a magnet in the field circuit of a self-regulating shunt-wound motor, and in adjusting it to act in that location, with the starting-box located in the armature circuit. We find nothing in the prior art to militate against the allowance of the claims in suit [1 and 4]." Cutler-Hammer Mfg. Co. v. Hammer (C. C.) 128 Fed. 733.

It is manifestly necessary to ascertain what propositions were actually considered and passed upon by the appellate court, and what material evidence has been adduced on this trial that was not before the Circuit Court of Appeals when its opinion was rendered. The defendants insist with great vigor that the claims in suit are void for lack of oath by the inventor; that the history of the patent in the patent office discloses that all of the original claims were rejected, and new and different claims were substituted therefor by the attorney of the inventor, which were in conflict with the original claims, and were not verified, as required by law; that the retaining magnet by the original claims was located in the same circuit as the switch, whereas in the amended claims the magnet was placed in the field circuit, and the switch in the armature circuit. The test laid down by the authorities in such a case is whether the claims as amended were within the original specification. Williams Co. v. Miller (C. C.) 107 Fed. 290, 292. A reference to the original specification shows that Blades therein located the retaining magnet "preferably in that circuit." Judge Baker evidently had this distinction in mind when he said in the opinion:

"No matter, therefore, how broad the applicant made the original description of his invention, the narrowing of the specification and the limitation of the claims in suit left the invention as now claimed within the preferred range of the original specification."

Several other objections are raised based upon alleged irregularities in the patent office and amendments of claims and drawings, but an examination of the briefs of the respective counsel in the Harding-Hammer Case discloses the fact that all of these several objections

were made and insisted upon in that case, except that it is now objected for the first time that the Blades device was inoperative because the retractile spring was coiled in the wrong direction, and, second, that the cores of the electro-magnet, as they appear in Fig. 3, would short-circuit the switch, and render the machine inoperative. To dispose of these two objections we must remember that the drawings of a patent are addressed to those who are skilled in the art. Furthermore, drawings must be considered in connection with the claims and specification, and each figure must be construed in the light of the other drawings. Now, the function of this coiled spring was stated to be to retract the contact arm from an "on" to an "off" position when the retaining magnet became de-energized. Any one skilled in the art would know that such spring to be operative should be so adjusted as to increase the tension as the contact arm is swung from the initial to the final position. If he saw that the inventor had indicated by his drawing a spring so adjusted as to be relaxed at the point where the greatest tension was required, he would understand at a glance what was intended, and that a mere clerical mistake had been made.

The same reasoning disposes of the other objection. If Fig. 3 were considered with Figs. 1 and 2, no electrician could be misled for a moment as to the conception of the inventor. We therefore dismiss these points as without merit. Royer v. Coupe (C. C.) 29 Fed. 358, 370; Western Telegraph Co. v. American Telegraph Co., 131 Fed. 75, 65 C. C. A. 313.

All of the numerous references to the prior art cited here appear in evidence in the record of the Harding-Hammer suit, except Thomson & Houston, No. 220,948, Ries, 356,963, Griscom, 374,673, Mather, 382,714, Loomis & Coley, 350,754. Neither of these patents, standing alone, is a complete anticipation of Blades' conception, which involved the location of a retaining magnet in the field circuit, mounted upon a starting-box to protect a self-regulating shunt-wound motor, such starting-box located in the armature circuit, with means to retrieve the contact arm when released by the magnet through failure of potential. It is unnecessary to point out the structural details of these several devices. It is enough to say that neither discloses the same combination of elements embodied in the Blades patent. Neither has a retaining magnet located in the field circuit as an adjunct of a rheostat in the armature circuit. Neither has a magnet which without change would be operative in the current of the field circuit to accomplish the function imposed upon it in Blades' conception.

It is only necessary to comprehend the evolution of the electric motor to understand why the various regulating devices formerly interposed to absorb or delay the current have disappeared before the self-regulating motor with constant potential. With the shunt-wound motor, however, came new perils. It was found that the shunt-wound motor with an armature of low resistance was practically defenseless during the period of starting. To obviate this danger the manual starting-box was devised, whose function it was to cut out the resistance gradually while the armature was developing sufficient speed to be self-

protecting. This manual rheostat had its limitations, because it was dependent upon human agency. If, through the negligence of an employé the contact arm were left in intermediate position, disaster might follow to the starting-box and to the armature of the motor. Some suitable automatic device was still needed that would be more reliable than human instrumentality. That was the problem that confronted the art when Blades appeared with his invention. The necessary elements of such a contrivance were already in the prior art. The starting-box, the resistance-coils, the contact-lever adapted to sweep over the contact points and gradually cut out the resistance, the retaining magnet, the retractile spring to actuate the lever, were all old. It remained to organize these old features into a single device that would automatically furnish protection to the motor as well as the rheostat when for any reason the circuit was opened and liable to be suddenly closed. It was a prevalent idea among electricians at that time that the magnet in such a device ought not to be located in the field circuit; that current being delicate, it was thought that a magnet of sufficient power to be available would rob the derived circuit, and render the machine inoperative. Prof. Jackson testified (C. R. 331) : "So that it became traditional in the art that the shunt-wound circuit should not be tampered with, and that no extraneous features should be introduced therein." But there remained a serious danger consequent upon a break in the field circuit, which might be followed by disastrous results to the armature, if the current were turned on after it had lost its counter electric motor force. So Blades arranged his combination of these old elements, placing a retaining magnet of low power in the field circuit mounted upon a manual starting-box adapted to open and close the armature circuit.

Shepardson had grasped the problem, but he stopped at the main circuit. Walter had arranged to cut out the resistance coil by means of a pulling magnet with dash-pot attachment located in the field circuit, but had no automatic appliance to retract the contact arm and protect the motor in case of a break in the field circuit after the motor was once under way. It appears from the evidence that the Walter device did not prove an operative or commercial success. C. R. 332. Blades found the manual rheostat where Mather left it, adapted to interpose or withdraw resistance in the path of the armature circuit just as it is now. He did not change or undertake to improve it. It was a complete device while operated by hand. He desired to retain the manual features, to insure the presence of the operator for greater safety until the lever had reached its final position, and had been embraced by the retaining magnet, so that the current passed to the armature without obstruction. His contribution to the art belonged to that class of invention where greater merit lies in the conception that a certain new result can be accomplished by a new combination of elements than by any mechanical ingenuity in working out the combination. Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586 ; Comptograph Co. v. Mechanical Co. (C. C. A. 1st Cir.) 145 Fed. 331. To embody that conception he had merely to adopt from the prior art certain well-known devices, and associate them in a unitary structure—the

manual starting-box located in the armature circuit, a retaining magnet of low power attached to the same, to respond to a failure of potential in the field circuit, and means to retract the contact lever automatically when the same was released by the de-energized magnet.   Thus resistance was instantaneously and automatically interposed, equal to the counter electric motor force of the armature, in anticipation of a sudden re-establishment of the current.   As soon as his inventive thought had shown the way, it seemed a simple and almost obvious thing.   For instance, Thomson & Houston, as early as 1879, were granted a patent for an ingenious device to protect an electric generator whose function was to supply a storage battery.   Perhaps from a mechanical standpoint this invention disclosed a greater number of elements of the Blade combination than any other reference to the prior art.   This patent was issued many years before the self-regulating shunt-wound motor had been evolved; therefore there was no starting-box or field circuit as elements in that early combination.   There was a dial with contact points swept by a lever, a retaining magnet adjusted to hold the lever in final position and to release the same on failure of the current from the generator, and a retractile spring to retrieve such lever, and thus interpose resistance in the path of a reverse current from the storage battery, which, if not arrested, would work injury to the generator and reverse the magnets.

Now it is argued with great assurance and with considerable plausibility that each of these several elements so appropriated by Blades, performs the same function in the new combination in the same way, and that no invention was involved in associating them in a new environment; that Blades' conception would be naturally suggested to any mechanic by the Thomson & Houston device.   If this were true, how did it happen that Thomson & Houston, who were both great electricians and inventors in the same field, never thought of using this device to protect a shunt-wound motor?   They were prominent figures in the struggle to arrive at the very improvement that Blades was the first to suggest.   They were associated with some of the great companies that acquiesced in the novelty of Blades' conception, and paid tribute to him as the first inventor.   While approaching the patent in suit in mechanical contrivance, the Thomson & Houston device was wholly lacking in the inventive thought that dealt with the two derived circuits, and virtually established new relations between them.   The Thomson & Houston magnet lay in the path of the main circuit, and had to be wound to carry such current continuously.   Without new winding it would be entirely inoperative in the field circuit.

It is not seriously contended that either of the five new references, standing by itself, completely embodies all the features of the patent in suit; but it is earnestly argued that the Thomson & Houston patent would furnish certain mechanical features, and the Mather patent certain electric adjustment, which, being skillfully combined, would make an operative device, which would discharge the functions and prove the equivalent of the Blades structure.   Therefore, it is contended that such combination involved no invention.   No doubt after Blades had solved the problem it seemed simple enough.   But the

reasoning of defendants' counsel is fallacious, and may be best answered by a paragraph from the opinion of the Supreme Court in Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945:

"Before entering upon a separate examination of these several patents, it is proper to remark that it is not contended that any one of these embodies the entire invention secured to the complainant in his letters patent. But it is insisted that each contains some feature, device, or partial mode of operation corresponding in that particular to the corresponding feature, device, or partial mode of operation exhibited in the complainant's patent. Suppose that is so, still it is clear that such a concession cannot benefit the respondent, it being conceded that neither of the exhibits given in evidence embodies the complainant's invention or the substance of the apparatus described and claimed in his specification. Where the thing patented is an entirety, consisting of a single device or combination of old elements incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire invention is found in one prior patent, printed publication, or machine, and another part in another prior exhibit, and still another in a third exhibit, and from the three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement."

Again, the Supreme Court in Loom Company v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177:

"It is further argued, however, that, supposing the devices to be sufficiently described, they do not show any invention, and that the combination set forth in the fifth claim is a mere aggregation of old devices, already well known, and therefore it is not patentable. This argument would be sound if the 'combination claimed by Webster was an obvious one for attaining the advantages proposed—one which would occur to any mechanic skilled in the art. But it is plain from the evidence and from the very fact that it was not sooner adopted and used that it did not for years occur in this light to even the most skillful persons. It may have been under the very eyes, they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit."

It is well understood, as argued by defendants, that the transference of a given device to a new field does not involve invention. With all these principles in mind, the Circuit Court of Appeals determined that Blades did something more than to borrow from the prior art; that he was, able to bring before his mind certain dangers to which the manual starting-box, as Mather left it, was subjected, and a new arrangement of old elements to meet the long-felt want, which had eluded all the inventors in that field, whereby danger from a failure of potential in the field circuit might be automatically anticipated, and adequate resistance promptly supplied to protect the starting-box in the armature circuit against a probable re-establishment of the current and resulting damage, and that his contribution to the art exhibited a high degree of inventive talent. Although the elements were all old, this eminently useful and novel combination embodied the highest quality of invention. Morrley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715.

The new references cited here would not in my opinion have changed the conclusion reached by the Court of Appeals. The claims of neither

of such five patents respond to the inventive thought of the patent in suit, and we must therefore hold that Blades' conception involved patentable novelty and invention.

Do the defendants infringe claims 1 and 4 of the patent in suit? It is practically settled by the Court of Appeals that the former device of the defendant was an infringement, and the defendants have acquiesced by an abandonment of that machine. Since January, 1904, the defendants have been operating under the Keeney-Rhine patent, No. 777,637, which was granted since the decision of the Circuit Court of Appeals in the Hammer-Harding Case. The fact that the defendants have been able to secure a patent is not conclusive on the issue of infringement. Ries v. Barth Manufacturing Co. (C. C. A.) 136 Fed. 850. "Where a complainant patentee has accomplished a new result by a new means, a defendant cannot escape the charge of infringement merely by showing a later patent. The field covered by the primary patent is not free for defendant's plow without the owner's consent."

Prof. Jackson, who was the complainant's expert, on pages 56 to 58 of the record has made a careful analysis and comparison of the claims of these two patents, from which, and from a careful examination of the structures in evidence, it satisfactorily appears that the defendants have appropriated every material feature of the claims of the Blades patent. They seem to have combined the same elements substantially in the same way to produce the same result. The defendants, however, claim that there are two essential and distinctive features in their patent which differentiate it from the patent in suit: First. The contact lever is split into two pieces, pivoted at the same point. Second. It is contended that the defendant's switch is not located in the armature circuit, but in the main circuit.

Let us consider first the split arm. It is true that when the contact arm consists of two pieces—the one bearing the armature for the magnet and the contact lever proper being free to move over the contact points while the armature is engaged by the magnet—the reading of the claims must be necessarily different, and to effect that difference in language would seem to be the purpose of the changed construction. No useful purpose is disclosed for this alleged improvement, and the conclusion, therefore, is well nigh irresistible that it was a mere colorable evasion, or what the courts have called, a "studious avoidance of the literal definition of the specification and claims." Crown Cork Co. v. Aluminum Co., 108 Fed. 845, 866, 48 C. C. A. 72. It appears that the freedom of movement of the contact lever while its other half is held by the magnet in the "on" position not only subserved no useful purpose, but suggests an obvious danger that it may be left in an intermediate position, thus bringing a portion of the resistance coils into the current, where they cannot long survive. This danger is pointed out in the specifications of defendant's patent. To obviate this danger a short circuiting device was added, whose function is to neutralize their alleged improvement. This practically amounts to a mechanical confession. The avowed purpose of the new electrical device is to secure unity of action, which has been purposely impaired by splitting the arm. Therefore, the defendants cannot es-

cape infringement by reason of this elaboration, whose only function seems to be to change the reading of the claim.

Second. Is the difference in circuit arrangement substantial? It is contended that the defendants' switch is located in the main circuit, while in the patent in suit it belongs in the armature circuit. The fact is that the contact arm in the defendants' device is pivoted at the point of juncture. The claims of the patent in suit do not specifically locate the switch, but provide that it shall be "adapted to open and close the armature circuit." The defendant's switch must be so adapted as to control the current that passes through the armature, or it would fail in its chief function. It is manifest from an examination of the claims of defendant's patent that no such distinction was in the mind of the inventor when he made his application, because in the eighth claim he uses the exact language of claims 1 and 4 of the patent in suit: "In a shunt-wound electric motor, the combination with the field circuit of a magnet in said circuit, a hand-switch adapted to open and close the armature circuit," etc. This would indicate that the claim now made is an afterthought.

As the court said in Lourie Improvement Co. v. Lenhart, 130 Fed. 122, 129, 64 C. C. A. 456:

"One may not escape infringement by changing the form of the patented device, unless the form is the distinguishing characteristic of the invention, while he retains its principles and mode of operation and attains its result by the use of the same or equivalent mechanical means."

The real question is whether the inventive idea of the original patentee has been appropriated, and whether the defendants' device contains the material features of the patent in suit, even though the defendants may have supplemented and modified those features to such an extent that he may be entitled to a patent for the improvement. Crown Cork Co. v. Aluminum Co., supra; Benbow Manufacturing Co. v. Simpson Mfg. Co. (C. C.) 132 Fed. 614; Austin Mfg. Co. v. American Wheel Works, 121 Fed. 76, 57 C. C. A. 330.

The case of Eck v. Kutz (C. C.) 132 Fed. 758, 766, is very much in point. There the complainant's patent had a cross-arm actuated by a lever. Defendant subdivided this cross-arm, and the two parts were separately pivoted. But, as the court said, they "retain the same relative position, and do the same work as that of which they take the place." The outer arm was also similarly divided up, and was given an inclined axis. But the court further said:

"With all this, the operation is essentially unchanged, not only of the whole, but of each part, and that is the significant thing. Except where form is of the essence, it has little weight, and departure from it does not escape infringement where identity of operation is retained."

But if it were conceded that the split lever was a valuable improvement, it would not change the result as to infringement. The improver must pay tribute to the patentee inventor, whose conception and mechanism he has borrowed as a basis for improvement.

## Contributory Infringement.

Blades made a shunt-wound motor one of the elements of his combination. He thereby limited the scope of the invention. The defend-

ants claim that their switch may be used, and in practice is used with series wound motors. It is conceded that certain changes must be made in the wiring of the box to adapt it to the series wound motor. But as the defendants do not manufacture or sell the self-regulating shunt-motor, they do not put upon the market the complete combination called for by claims 1 and 4 of the Blades patent. In such case the law is well settled that to make defendants liable for contributory infringement it must be shown either that defendants sell a part of the patented combination with intent that it shall be incorporated by the purchaser into a patented device, or that the portion of the structure so sold by defendants is not capable of use except in combination with the other elements of the complainant's device.

Considerable evidence was given tending to show that the starting-box manufactured by the defendants, embodied in the exhibits in evidence and shown in their printed literature, is incapable of use except with a shunt-wound motor, either of the simple or compound type. But without discussing that proposition, it is clearly established by the printed catalogues and literature of the defendants that they intended to sell a starting-box to be associated with a shunt-wound motor. On page 1 of one of their catalogues in the record appears the following paragraph:

"Ordering. In ordering rheostats, state what type is wanted, the horse-power, voltage of the motor, and if series or shunt or compound. When no information is given, we always ship rheostats for shunt-wound motors."

This would seem to conclude the defendants as to their purpose and as to their liability. Of course no contribution can be claimed from the defendants for rheostats sold for use in connection with series wound motors.

The following cases lay down the rules governing contributory infringement as here applied: Wallace v. Holmes, 9 Blatchf. 65, Fed. Cas. No. 17,100; T. & H. Electric Co. v. Ohio Co., 80 Fed. 712, 723, 26 C. C. A. 107; Westinghouse Co. v. Dayton (C. C.) 106 Fed. 729; Red Jacket Manufacturing Co. v. Davis, 82 Fed. 432, 27 C. C. A. 204.

In the final decree to be drawn and in the accounting the defendants will be held as contributory infringers of claims 1 and 4 of the patent in suit upon the principles here laid down. The complainant will be awarded an injunction.

### Baker Patent, No. 368,804.

The claim of the inventor is as follows:

"An electric resistance coil, consisting of a tube made from material which is a nonconductor of electricity, and fine wire coiled upon the tube in coils not in contact with each other, substantially as and for the purpose specified."

Defendants deny infringement, and set up anticipation by sundry and divers references to the prior art. It is manifest that this claim, standing alone, does not disclose either novelty or invention. The prior art affords numerous resistance coils, each consisting of a tube made from material which is a nonconductor of electricty. Fox (No. 254,764) shows a tube of nonconducting material with fine wire wound about it loosely. Starr (No. 266,910) discloses a tube of glass or hard rub-

ber. Lieverman & Robb (No. 276,840) shows tubular cores with wire wound thereon, such wire being wrapped with asbestos thread. Benton (No. 357,592) employs a tube of earthenware. British Patent to Zamie discloses a cylinder of ebonite, upon which bare wire is wound. It is required by the statute that the inventor "particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery."

It is the function of a claim to accurately describe the real invention. 2 Robinson on Pat. 5526. If the patentee knew of what he was the actual first inventor, he did not comply with the statute. Terry Clock Co. v. New Haven Clock Co., 3 Ban. & A. 332, Fed. Cas. No. 13,841; Day v. R. R., 132 U. S. 98, 102, 10 Sup. Ct. 11, 33 L. Ed. 265. The patent as granted was broader than the invention.

It is argued by complainant that the elastic phrase "substantially as and for the purpose specified" supplies the defect in the claim, and limits its scope to the use of asbestos paper as the material to be employed in making the tubes. The argument proceeds upon the theory that asbestos paper has been selected and is the chief feature of the discovery. Numerous advantages are pointed out which result from the employment of this new material. But it appears that in the specification the inventor declines to be limited to asbestos paper. This would seem to neutralize the formula "substantially as and for the purpose specified." Boyer v. Keller Tool Co., 127 Fed. 130, 134, 62 C. C. A. 244.

But if the invention is limited to the selection of a new material out of which to construct an old device, such change does not rise to the dignity of invention. Cylinders and tubes of fire-proof nonconducting material upon which bare wires has been wound being common to the art, and asbestos thread having been employed in the structure, the substitution of asbestos paper was a simple and obvious expedient open to any one. Hotchkiss v. Greenwood, 11 How. 248, 265, 13 L. Ed. 683; Florsheim v. Schilling (C. C.) 26 Fed. 256, 261; Sloan Filter Co. v. Portland Co. (C. C. A.) 139 Fed. 23, 26; American Road Mach. Co. v. Pennock, 164 U. S. 26, 17 Sup. Ct. 1, 41 L. Ed. 337.

For these reasons, we are constrained to hold that the patent while in life exhibited neither patentable novelty nor invention, and that, so far as the Baker patent is concerned, the bill must be dismissed.

Let a decree be entered accordingly.