### 9374.   POTTS *v.* MOULTRIE BANKING COMPANY.

1. On the trial of a suit against a bank, an agent of the plaintiff is not competent to testify in behalf of the plaintiff as to transactions or communications solely with a deceased cashier of the bank.
2. To authorize a recovery because of a local custom alleged to be a part of the contract on which the suit is based, it must appear that both parties knew of and contracted with special reference to that custom.

DECIDED JULY 11, 1918.

Complaint; from Colquitt superior court—Judge Thomas.   November 1, 1917.

*Parker & Gibson,* for plaintiff.   *Shipp & Kline,* for defendant.

BLOODWORTH, J.   Potts gave his note to the Moultrie Banking Company, and, as a part of the collateral to secure its payment, turned over to the banking company a rent note given him by Phelps, a tenant of his.   In the fall of the year in which both notes were due, Phelps, under the instructions of Potts, delivered to the Moultrie Banking Company receipts for 13 bales of cotton stored in the Farmers and Merchants Warehouse at Moultrie, Georgia, the receipts to be held by the bank "as collateral security for both of the notes."   The cotton was destroyed by fire, and Potts sued the Moultrie Banking Company, setting out these facts and further alleging, in his petition as amended, that "the warehouse receipts herein specified were by the said M. T. Phelps delivered to Z. H. Clark, the then cashier of the defendant's bank, and in charge of its office and business, and at the time of this delivery the said Clark instructed the said M. T. Phelps not to have said cotton insured, or insurance written covering said property; he, the said Clark, then and there stating and promising the said M. T. Phelps that he, the said Clark, as agent of the defendant bank, would procure fire insurance to be written insuring said cotton against loss

by fire." It is further alleged: "that it was the universal custom of all banks in the city of Moultrie, where said defendant bank is located, and in said county, during the year 1914 and prior thereto, to insure all cotton held by them and all cotton for which receipts were deposited as collateral with such banks; that this was particularly the usage of trade with the defendant during the period specified; that it was the general and well-known custom and usage of the defendant bank to procure insurance for all cotton held by it as collateral; that defendant did actually insure its own cotton and that of other people when so deposited with it, and that it did insure other cotton of the plaintiff left with defendant by the plaintiff as collateral during the same year and prior to the date on which plaintiff left the cotton described in the fourth paragraph of the original petition to have been left. Plaintiff further shows that it was the habit of dealing between plaintiff and defendant, as fixed by the settled, understood, and mutually recognized policy and custom of said defendant bank, so to procure insurance on all cotton, when the receipts for which were left or deposited with said defendant as collateral securities by the plaintiff; that this existing custom had become so fixed and settled between plaintiff and defendant, by the usage of trade and by the previous dealings of the parties, as to become a part of the contract of the bailment under the law; that defendant was under a duty to insure the above-described cotton to its full value for a period of such bailment, and that having failed and neglected to do so, and the said cotton being destroyed during such period of the bailment, as hereinbefore set out in the petition, defendant is therefore liable to plaintiff for the resulting damage as set forth in the seventh paragraph of the original petition."

Upon the trial the plaintiff offered to prove by Phelps that at the time the receipts were delivered to Clark, the cashier of the bank, Clark told Phelps not to have the cotton insured, "that the Moultrie Banking Company carried insurance in its own name on all cotton deposited with them by its customers, and that the bank would have this particular cotton insured for its full market value." The plaintiff offered also to introduce testimony of the same witness as follows: "I was not the agent for plaintiff, Potts, or for the bank; my agency for Potts was limited to delivering the warehouse receipts to the bank. I have no interest in the result of this

case." (The original petition contained the allegation that Phelps was acting as agent for Potts, but this allegation was stricken by amendment.) This testimony was rejected "on the ground that, the transaction having occurred between witness and the cashier, now deceased, said witness is not competent to testify to the facts stated." The plaintiff offered to prove by witnesses that it was the general custom of all the banks in Moultrie, where defendant bank was located, to insure cotton deposited with them as collateral security, and that this custom was followed by that bank. The plaintiff offered also to testify as follows: "I had other cotton deposited with the Moultrie Banking Company at the time of the fire which destroyed the Farmers' & Merchants' Warehouse, which other cotton was insured by the Moultrie Banking Company, and for which cotton the Moultrie Bank paid me; that the defendant bank carried insurance on other cotton held by it for its other customers, whose cotton they held as collateral security, but that they neglected to insure these particular thirteen bales of cotton. I also, at the same time, had cotton deposited with the Citizens Bank of Moultrie, and the Citizens Bank had insured the cotton so deposited by me with it against loss by fire; that some of the cotton so deposited with the Citizens Bank was destroyed in the same fire; that the Citizens Bank collected the insurance on the cotton so deposited with it, which was destroyed by fire, and gave me credit for the amount collected." The court rejected all this testimony. The plaintiff announced closed, and on motion of the defendant a nonsuit was granted, and the plaintiff excepted.

1. Where it appears undisputed that the cashier of a bank is dead, transactions relating to the business of the bank which were conducted solely by the deceased cashier with an agent of the plaintiff, are inadmissible in evidence in a suit between the bank and the other party. Civil Code (1910), § 5858 (5).

2. If the court erred in rejecting the evidence offered by the plaintiff as to the custom of the banks of Moultrie, and which is copied in the foregoing statement of facts, the error was harmless; for if the evidence admitted was supplemented by that which was rejected, the whole would not be sufficient to authorize a verdict for plaintiff. In *Hendricks* v. *Middlebrooks Co.,* 118 *Ga.* 131 (44 S. E. 835), Chief Justice Simmons said: "In the Political Code, § 1, par. 4, it is expressly declared that 'The custom of any

business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became, by implication, a part of the contract.' A mere local custom or business usage which springs up in a particular city is not; therefore, 'binding except upon those who have recognized it in their own transactions and thus adopted it for their own dealings.' *Miller* v. *Moore,* 83 *Ga.* 685 [10 S. E. 360, 6 L. R. A. 374, 20 Am. St. R. 329]. As to one who has never recognized the existence of such a custom, his assent thereto can not reasonably be inferred, unless it affirmatively appears that he had knowledge thereof at the time he contracted. *Kelly* v. *Kaufman,* 92 *Ga.* 105 [18 S. E. 363]; *American Sugar Co.* v. *McGhee,* 96 *Ga.* 27 [21 S. E. 383]; *Horan* v. *Strachan,* 86 *Ga.* 408 [12 S. E. 678, 22 Am. St. R. 471]. And it necessarily follows that unless he did in fact have such knowledge, and actually contracted with reference to such custom, he is not in a position to assert that it became, by implication, a part of a contract into which he and another entered, whether the latter had or had not, in prior dealings with others, given recognition to the custom. *Sugart* v. *Mays,* 54 *Ga.* 554. This is so for the simple reason that to so assert would do violence to the real truth of the matter. As has been seen, the plaintiff alleged that 'It is the custom with the grocers of Macon and with the said W. G. Middlebrooks Co. to furnish an itemized statement of all accounts upon request of debtor for same.' He did not, however, undertake to say that he contracted with reference to this alleged local usage, or that he had any knowledge of the same at the time he bought goods from that firm, or even that this custom was in existence at that time." It is further said in the opinion (p. 139) that in the petition there must be an unequivocal averment that in point of fact the plaintiff knew of and contracted with reference to the local custom. If it is necessary that this be alleged in the petition, it is necessary that these facts be proved, and neither in the evidence admitted nor in that rejected is there anything to show that plaintiff contracted with reference to the alleged local custom. On the contrary, as far as the evidence tends to show any contract, it was a special and verbal one made by the cashier with Phelps, the agent of the plaintiff, and without reference by either of these parties to any custom. However, Phelps swore: "Mr. Potts did not give me any instructions with reference to having

his cotton insured." There is no evidence to show that Phelps ever told Potts what Clark, the cashier, is alleged to have stated about insuring the cotton. Therefore no contract was entered into between the bank and Potts. Indeed, counsel for the plaintiff in error admit this, and place his right to recover squarely on the custom. Plaintiff in error further insists that the evidence should not have been rejected, because it showed "a habit of dealing between the parties," and, on account of this "habit," insists that the bank is liable because it did not insure the cotton. With this contention we can not agree. The isolated fact that the plaintiff had cotton deposited with the Citizens Bank of Moultrie, and the Citizens Bank had insured the cotton so deposited with it against loss by fire, and that some of the cotton was destroyed in the same fire, and that the Citizens Bank collected the insurance on the cotton so deposited with it, and paid the plaintiff therefor, is not sufficient to show a "habit." It is not alleged or proved that this lot of cotton was insured because of the alleged custom. There may have been a separate and independent contract as to this.

3. In the absence of the evidence as to the transaction with the bank cashier, and as to the custom of the bank, there was no evidence to authorize a finding for the plaintiff, and the court, on motion, properly directed a verdict for the defendant.

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*