**PITTSBURGH–ERIE SAW CORPORATION**

v.

**SOUTHERN SAW SERVICE, Inc.**

**Civ. A. No. 4817.**

United States District Court
N. D. Georgia, Atlanta Division.
July 27, 1955.

---

J. Winston Huff, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Blenko, Hoopes, Leonard & Buell, Edward Hoopes, III, Pittsburgh, Pa., for plaintiff.

Griffin B. Bell, Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., Herbert H. Porter, Washington, D. C., for defendant.

SLOAN, District Judge.

Plaintiff sues for infringement of United States Reissue Patent No. 23,231

relating to method and apparatus for wrapping saw blades or the like.

Plaintiff charges defendant with infringement of apparatus claim 20 by making and using within six years prior to the filing of the complaint, an apparatus for wrapping saw blades covered by that claim and with the infringement of method claims 23, 24 and 25 by performing the method covered by those claims.

The defendant:

"1. Denies infringement, and

"2. Asserts that plaintiff has no right in Court to allege infringement for the reason that defendant enjoys intervening rights, and

"3. That the reissue patent and its claims are invalid."

The case came on for trial before the Court on the pleadings, stipulations and the evidence consisting of oral testimony and documentary proofs. Witnesses were called by the respective parties whose testimony was transcribed in the record. The Court has had the benefit of argument of counsel orally and upon brief. The Court has reviewed the record and briefs of counsel; has considered the proposed findings of fact and conclusions of law which have been submitted, and weighed carefully the arguments presented, and upon due consideration of the whole case, the Court makes the following:

### Findings of Fact.

1. The plaintiff is the Pittsburgh-Erie Saw Corporation, a Delaware corporation, of Pittsburgh, Pennsylvania, and the defendant is the Southern Saw Service, Inc., a Georgia corporation of Atlanta, Georgia.

2. The patent in suit is United States Reissue Patent No. 23,231 relating to method and apparatus for wrapping saw blades or the like. The claims in suit are apparatus claim 20 and method claims 23, 24 and 25.

3. From January 11, 1949 to May 16, 1950, the plaintiff was the owner of United States Patent No. 2,458,971, the parent of the reissue patent in suit, and from May 16, 1950 to the present time plaintiff has been and is the owner of the reissue patent in suit.

4. Plaintiff is the first to wrap band saw blades or any endless, flexible flat articles and the patent in suit is a pioneer patent in the art.

5. Plaintiff's method of wrapping saw blades supplants the use of bags and has many advantages and the advantages of the invention are not denied or disputed by the defendant. The invention of the patent in suit is meritorious and has advanced the state of the art. It has had extensive commercial use and plaintiff has wrapped on the blade wrapping machines over nine million band saw blades and plaintiff's income from its wrapped saw blade service has been in excess of five million dollars.

6. Plaintiff's band saw wrapping machines are substantially the same as the machine shown in the patent in suit and plaintiff's method is the same as the method of the patent. The drawings of the patent in suit contain minor discrepancies which do not interfere with or prevent an understanding of the construction and operation of the machine and do not prevent the construction of a satisfactory machine from the drawings by one skilled in the art; the drawings are much more complete than sketches that are often handed to good mechanics to make machines with verbal or written instructions accompanying the sketches.

7. The patent in suit teaches for the first time a new combination of elements producing a new and useful result; the combination of the strip folding means which are openable to permit introduction of the endless band and removal of the wrapped endless band together with opposed pinch rolls acting on the flat faces of the band and wrapping strip so that as the pinch rolls advance the band and wrapping strip, the folding means act on the wrapping strip to progressively fold it about the band prefer-

ably in a substantially straight wrapping path.

8. The patent in suit discloses the best mode of practicing the invention, but is not limited to the particular form shown. The phrase "progressively folding the wrapping strip" used in certain of the claims, means a folding accomplished during the progress or movement of the strip and band through the wrapping path and is not limited to folding accompanied by a series of separate steps performed one after the other, with each step being completed before the succeeding step commences.

9. In the machine shown in the patent drawings, and in plaintiff's machine, the strip folding means open laterally to permit introduction thereinto of the endless band at the beginning of the operation and removal of the wrapped endless band at the conclusion thereof. In the method of the patent, and in the plaintiff's method, the endless band to be wrapped is introduced laterally into the wrapping path and the wrapped blade is withdrawn laterally from the wrapping path. The words "lateral" and "laterally" as used in the patent in suit mean at right angles to the wrapping path, either horizontally, vertically, or otherwise. Lateral is not the antonym of vertical.

10. The defendant's machine and method is in all material respects the same as the plaintiff's machine and method, although the machines differ in form; the differences in form between the machines are not differences which reflect any departure by the defendant from the invention of the patent in suit.

11. The fact that in defendant's operation both sides of the wrapping strip are being turned about the band at the same time does not avoid the invention or the claims of the patent in suit; the wrapping is progressive just as in the patent and the result is the same. Closing of the defendant's pinch rolls before closing the formers is a difference of no significance over the operation of the patent in which the formers are closed first; in both cases the same result is accomplished in the same way. The defendant's apparatus responds completely, both in terms and substance, to claim 20 of the patent in suit and the defendant's method responds completely both in terms and substance to claims 23, 24 and 25 of the patent in suit.

12. Endless band saw blades, as wrapped on the machine and by the method of the patent in suit, with the lap of the wrapping strip at the inside of the endless band are stable and do not need to be turned inside out or flipped to make them stable. The flipping of plaintiff's blades to bring the lap of the wrapping strip to the outside is a matter of preference rather than necessity and is done because it costs nothing. It would not be done if any substantial cost were involved in connection with it.

13. The defendant became interested in wrapping band saw blades through the fact that Mr. Anderson, now the President of the defendant company, had seen the plaintiff's wrapped band saw blades in the market. Defendant built its blade wrapping machine as a model to show the plaintiff in the hope of arriving at a mutual understanding through which defendant would license plaintiff to use the defendant's alleged improvements in return for a license under the patent in suit. It was the defendant's affirmative intention, not only prior to, but also for years after the reissue, not to use the accused machine and not to assume a posture adverse to plaintiff or to the patent in suit. After the grant of the reissue patent defendant represented to plaintiff that it had not used the accused band wrapping machine, and from prior to the reissue and continuing until August, 1953, more than three years thereafter, the defendant made no use of its blade wrapping machine other than to experimentally wrap a few blades, and as soon as defendant was notified of the infringement of the patent in suit, it immediately

stopped using the accused blade wrapping machine and hasn't used it since, further evidencing defendant's affirmative intention not to assume a posture adverse to the patent in suit.

14. Until August, 1953, the defendant's accused blade wrapping machine lacked elements necessary for commercial operation, further evidencing defendant's intention not to use the machine through a period extending years after reissue.

15. Mr. Anderson, the President of the defendant company, testified that he took wrapped blades to a Big Apple Store in 1948 or 1949 and delivered them to George Campbell. His testimony in this respect is uncorroborated, and although the defendant took Campbell's deposition, it withheld the deposition from evidence. The defendant did not call as witnesses a number of persons whose names and addresses were known to defendant before and during the trial and who, according to the sworn statement of Anderson, had knowledge of the wrapping of band saw blades on defendant's machine prior to the reissue.

16. None of the 21 prior art patents cited by the defendant relate to the wrapping of band saw blades or any endless, flexible, flat band; the prior art patents do not disclose or teach the subject matter of any of the claims in suit and do not render such subject matter obvious.

17. The tire wrapping patents set up by the defendant are affirmatively shown to be paper patents and there is no showing that any of the 21 prior art patents were ever used.

At the conclusion of plaintiff's testimony in chief the defendant moved to dismiss the complaint for lack of proof of infringement. The Court reserved its ruling on this motion for later decision.

After reviewing the evidence and giving consideration to the briefs and arguments of counsel, the defendant's motion to dismiss is overruled and denied.

There was offered and received in evidence, subject to objection, certain items of documentary evidence contained in a stipulation between the parties dated November 8, 1954, said stipulation being marked "PX20", this documentary evidence consisting of first, a stipulation as to the testimony of Mr. Hoopes, plaintiff's attorney, concerning a conversation with Alva D. Adams, Esq., now deceased, who was at that time attorney for the defendant, and a letter written by Mr. Hoopes to plaintiff in connection therewith ("PX–20C"). This testimony was objected to by defendant upon the grounds that it was prohibited under the dead man's statute, Georgia Code, § 38–1603(3), (5), and that Mr. Adams was not shown to have been authorized to make the statement attributed to him.

The general rule under Georgia Code Section 38–1603 is that all persons are competent to testify except those specifically prohibited. A portion of subsection (3) of this code section provides:

"* * * the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased * * * officer or agent of the corporation."

"Opposite party" as used in the above quoted clause of subsection (3) refers to an individual.

Mr. Hoopes is competent to testify. See Clover Leaf Casualty Co. v. National Life Ins. Co., 25 Ga.App. 382, 103 S.E. 689; Ullman v. Brunswick Title Guarantee & Loan Co., 96 Ga. 625, 24 S.E. 409. The letter ("PX–20C") written by Mr. Hoopes to plaintiff is admissible. Any doubt cast by the holding in Potts v. Moultrie Banking Co., 22 Ga.App. 498, 500, 96 S.E. 502 being resolved in favor of admissibility. The fact that Mr. Adams was not shown to have been specifically authorized to make the statement does not render the testimony inadmissible. See Mason v. Croom, 24 Ga.

211; Hardeman v. Hardeman, 179 Ga. 34(5), 175 S.E. 9.

The objection of defendant to the testimony of Mr. Hoopes and to this letter ("PX-20C") are overruled and the evidence is admitted.

■ Contained in said stipulation ("PX-20") were two letters written by Mr. Anderson, now the defendant's president, and a witness in this case, the letters being dated respectively, August 9, 1950 ["PX-20(a)"] and July 9, 1954 ["PX-20(b)"], in which Mr. Anderson, writing to plaintiff, denominates the accused machine as a model and refers to it as a model machine. Defendant now objects to these letters on the ground that it is an admission made with a view to compromise and as such is prohibited under Georgia Code Section 38-408. The objections to this evidence are not well taken as it has not been shown to be an offer of compromise or that the letters were induced by settlement negotiations, and to the contrary it appears that the statements were independent statements of fact. The objections to these letters are overruled and the same are admitted in evidence. See Austin v. Long, 5 Ga.App. 551, 63 S.E. 640; 31 C.J.S., Evidence, § 287, p. 1047.

### Conclusions of Law.

1. This Court has jurisdiction of the parties and subject matter under Title 28, Sections 1338 and 1400 of the United States Code.

■ 2. The patent in suit is a pioneer patent and as such is entitled to a liberal construction,[1] and to a broad and liberal range of equivalence and it is not to be limited to the precise device and instrumentality disclosed[2] and minor discrepancies in the drawings in the patent in suit do not invalidate the patent.[3] The patent in suit fully complies with the requirements of the law as to patent disclosures by disclosing the best method of practicing the invention.[4] The claims of a patent must always be explained by and read in connection with the specifications,[5] and the claims of the patent in suit must be interpreted consistently with the disclosure of the patent, so "laterally" as used in the claim can not be read as synonymous with "horizontally".

■ 3. All four claims in the suit, claims 20, 23, 24 and 25 of the United States Reissue Patent 23,231 are valid and none of the claims in suit is invalid over any of the 21 prior art patents cited by the defendant.[6]

4. The defendant's accused machine infringes apparatus claim 20 of the patent in suit.

5. The defendant's accused method infringes method claims 23, 24 and 25 of the patent in suit.

6. The patent in suit is not invalid for defining a method or means for producing an unstable article.

■ 7. Whether the old or the new law applies, defendant has no intervening rights because it did not comply with the legal requirements as to substantial use of the invention prior to reissue.[7]

■ 8. Since the defendant failed to call witnesses whose names and addresses were known to the defendant, and

---

1. Blanc v. Curtis, 6 Cir., 119 F.2d 395, 396.

2. Priebe & Sons Co. v. Hunt, 8 Cir., 188 F.2d 880, 881.

3. Cutler-Hammer Mfg. Co. v. Union Electrical Mfg. Co., C.C., 147 F. 266, 269; Remington Cash Register Co. v. National Cash Register Co., D.C., 6 F.2d 585, 620.

4. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

5. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 432, 22 S.Ct. 698, 46 L.Ed. 968.

6. Vegetable Oil Products Co. v. Dorward & Sons Co., D.C., 53 F.Supp. 281, 285.

7. Tulchin v. Perey Mfg. Co., 2 Cir., 87 F.2d 302.

who according to the oath of defendant's president had knowledge of the use of the invention prior to reissue, it is to be presumed as a matter of law that the testimony of those witnesses would be adverse to the defendant, and under such circumstances, the defendant's entire case is open to suspicion.[8]

9. The mere acquiring by the defendant of the purely experimental, noncommercial machine for the purpose of approaching the plaintiff looking toward an "arrangement", with only limited experimental and no commercial use of that machine, is not sufficient in law to create an intervening right either under the old law or the new.[9]

10. Under the old law (Title 35, Sec. 64 of the United States Code [1952 Revision, 35 U.S.C. §§ 251, 252], and the decisions of the Court thereunder as to intervening rights prior to 1953), an intervening right could be created only by substantial use prior to the reissue of a thing or method not covered by the original patent; an affirmative intention as the defendant had in the present case to respect the patent is inconsistent with the existence of prerequisite for an intervening right.

11. Under the present law (Title 35, § 252 of the United States Code, in effect since January 1, 1953), the extent of use necessary to create an intervening right is substantially the same as under the old law, but the statute vests discretionary power in the courts as to enforcement.

12. In the new law (Title 35, § 252) the phrase "made, purchased or used", has substantially the meaning of "made or purchased and used;" the word "or" is construed as "and" to give effect to the evident intention of the Congress.[10]

The plaintiff is entitled to the injunctive relief prayed and a proper decree may be prepared and presented.

---

8. Standard Sanitary Mfg. Co. v. J. L. Mott Iron Works, C.C., 152 F. 635; Ga.Code, § 38–119.

9. Tulchin v. Perey Mfg. Co., supra.

10. Comer v. American Telephone & Telegraph Co., 176 Ga. 651, 168 S.E. 786.