**SOUTHERN SAW SERVICE, Inc.,**
**Appellant,**

**v.**

**PITTSBURGH–ERIE SAW CORPORA-**
**TION, Appellee.**

**No. 15835.**

United States Court of Appeals
Fifth Circuit.

Nov. 27, 1956.

Rehearing Denied Jan. 3, 1957.

Hutcheson, Chief Judge, dissented in part.

Robert B. Troutman, Atlanta, Ga., Herbert H. Porter, Washington, D. C., Griffin B. Bell, Spalding, Sibley, Troutman, Meadow & Smith, Atlanta, Ga., for appellant. Mason, Porter, Diller & Stewart, Washington, D. C., K. Wilson Corder, Atlanta, Ga., of counsel.

Edward Hoopes, III, Pittsburgh, Pa., J. Winston Huff, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for appellee. Blenko, Hoopes, Leonard & Buell, Pittsburgh, Pa., of counsel.

Before HUTCHESON, Chief Judge, and BORAH and BROWN, Circuit Judges.

BORAH, Circuit Judge.

Pittsburgh-Erie Saw Corporation brought this suit against Southern Saw Service, Inc. on March 9, 1954, seeking injunctive relief and damages for an alleged infringement of its reissue patent No. 23,231. Plaintiff-appellee is the assignee of the original Wilson and Wilson patent No. 2,458,971, granted on January 11, 1949, for Methods and Apparatus for Wrapping Saw Blades or the Like. In 1948 and prior to issuance of the original patent, defendant-appellant had one of its employees build the accused machine for wrapping band saw blades. Within a year after the original patent had been granted and on November 29, 1949, the patentees, joined by plaintiff, filed application for a reissue of the original patent and reissue patent No. 23,231, the patent in suit, was granted on May 16, 1950. The Patent Office record with respect to the claims in the reissue patent shows that numerous claims of the original patent, including Claim 19,[1] were cancelled, that old Claims 11 and 12 were rewritten as reissue Claims 21 and 22 respectively, and that Claims 20, 23, 24, and 25 were added.

Four years after the reissue was granted, the instant complaint was filed in which it was alleged that within six years prior to the filing of the complaint, defendant, despite notice of the infringement, had been and still was infringing plaintiff's reissue patent by making and using an apparatus embodying the patented invention and method for wrapping band saw blades or the like. Defendant in its amended answer admitted that at times between March, 1948, and the date on which the complaint was filed, it made and used the accused machine, and by way of defense denied infringement, and the validity of the reissue patent and its claims, and asserted that it has an intervening right and is not liable for infringement, if any.

The case came on for trial before the court on the pleadings, stipulations, oral testimony and documentary proofs, and the court after having had the benefit of arguments of counsel orally and on brief, made complete and explicit findings of fact and stated its conclusions of law.

Thereafter, in conformity with its findings there was entered the judgment appealed from in which the court rejected the defense of intervening rights, declared that plaintiff's reissue patent No. 23,231 was valid and Claims 20, 23, 24, and 25 thereof infringed by defendant's accused machine, and perpetually enjoined defendant and all persons in privity with it from infringing reissue patent No. 23,231.

Appellant is here insisting that the judgment should be reversed in its entirety and each of the specifications of error assigned will now be considered.

With reference to the defense of intervening rights, the trial court concluded that it mattered not whether the "old"[2] or the "new" law[3] applies, for

1. 2–10, 13–16, 18 and 19.

2. Former 35 U.S.C.A. § 64 provides, in part: " * * * in so far as the claims of the original and reissued patents are identical, such surrender [of the original patent] shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent to the extent that its claims are identical with the original patent shall constitute a continuation thereof and have effect continuously from the date of the original patent. * * * Every patent so reissued, together with the corrected specifications, shall have the same effect and operation in law, on the trial of all actions for causes thereafter arising, as if the same had been originally filed in such corrected form * * *."

3. 35 U.S.C.A. § 252. "Effect of reissue. The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims

in either situation appellant has no intervening rights "because it did not comply with the legal requirements as to substantial use of the invention prior to reissue." [136 F.Supp. 101.] This conclusion was amplified somewhat in the court's opinion wherein it was stated that under Section 64 of Title 35, prior to its revision in 1952, an intervening right could be created only by substantial use prior to the reissue of a thing or method not covered by the original patent, and that "an affirmative intention as the defendant had in the present case to respect the patent is inconsistent with the existence of that prerequisite for an intervening right." As to the new law, the court in its opinion stated that under Section 252 "the extent of use necessary to create an intervening right is substantially the same as under the old law," the only difference being that the new statute vests discretionary power in the courts as to enforcement. This statement was bottomed upon the premise that the phrase "made, purchased or used" in Section 252 had substantially the meaning of "made or purchased and used." And in construing this phrase, the court concluded that the word "or" should be read as "and" for the purpose of giving effect "to the evident intention of the Congress."

■ It is the contention of appellee that former Section 64 governs with respect to the issue of intervening rights, but that in any event the trial judge was correct for the reasons which he gave. The contention that Section 64 controls is predicated upon the provisions of Sections 4(a) and 5 of the Act of July 19, 1952, c. 950, 66 Stat. 792, 35 U.S.C.A. preceding section 1, by which the revised U.S.C. Title 35 was enacted. Appellee argues that these sections saved from repeal its right of recovery for infringement of any claim of the original patent, without regard to whether such claim had been carried over in the reissue, and that survival of the right to prosecute such cause of action carried with it the correlative right to negative the within claim of intervening rights by showing insubstantial use. In support of this construction of the savings and repealing sections of the Act of July 19, 1952, appellee contends that the evidence clearly shows that the accused machine infringed Claim 19 of the original patent, and under the old law such infringement would negative appellant's claim of intervening rights. We do not at all agree. It is true that Section 5 of the Act of July 19, 1952, repeals certain sections of the prior patent act, including former Section 64, and the second paragraph of Section 5 states that "Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal." It is also true that former Section 64, which provides in part that "the reissue patent *to the extent that its claims are identical with the original patent"* [4] shall constitute a continuation thereof, undoubtedly gave appellee the right to sue, before or after reissue, for infringement of

of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

"No reissued patent shall abridge or affect the right of any person or his successors in business who made, purchased or used prior to the grant of a reissue anything patented by the reissued patent, to continue the use of, or to sell to others to be used or sold, the specific thing so made, purchased or used, unless

the making, using or selling of such thing infringes a valid claim of the reissued patent which was in the original patent. The court before which such matter is in question may provide for the continued manufacture, use or sale of the thing made, purchased or used as specified, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, * * * to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue."

4. All italics herein ours.

its reissue patent as to old or former claims which had been carried over into the reissue patent. But, as to original patents, Section 64 provides only that the surrender of the original patent shall not affect any action then pending, *nor abate any cause of action then existing.*[5] In the case at bar, appellee sued for infringement of the reissue patent, and solely as to new claims which were not in the original patent. It did not seek damages or injunctive relief for any alleged infringement of the original patent, and even though it still has a right under old Section 64 to prosecute a cause of action on the original patent which existed prior to the reissue, Shull Perforating Co. v. Cavins, 9 Cir., 94 F.2d 357, it has taken the position throughout this action that appellant's machine was capable of commercial operation and appellant's use thereof amounted to infringement only in and after August, 1953, that is, several years after the reissue. We are of opinion, therefore, that appellee, having elected to sue for infringement of the reissue patent, cannot here defeat the claim of intervening rights by urging a separate cause of action which it may or may not have on the original surrendered patent. Instead, we think that the question of intervening rights should and must be resolved under Section 252 of the 1952 Patent Act.

■ The first paragraph of Section 252 is a restatement of former Section 64, but the second paragraph is a new provision which protects intervening rights of any person who "made, purchased or used prior to the grant of a reissue anything patented by the reissued patent."[6] This protection is in the proviso which states that no reissue patent shall abridge the right of such person *"to continue the use of the specific thing so made,* purchased, or used," unless the using of such thing infringes a valid claim *which was in the original patent.* Appellant's defense was based upon the fact that it had made and operated the accused machine prior to the date on which the reissue patent was granted; that such making and using did not infringe any claim of the original patent *which was repeated in the reissue;* and this being so, it should be permitted to continue the use of the accused machine, even though there might otherwise be established in the suit an infringement of new or amended claims of the reissue patent. We think Section 252 supports appellant's position. With deference to the trial court's views, we can find no ambiguity on the face of the statute which warrants looking to legislative intent in using the words "made, purchased or used;" nor, conceding *arguendo* that such an inquiry were proper, is there anything in the legislative history to lend support to the construction placed upon the phrase by the trial court. Here, appellant made or purchased the accused machine in 1948, which was long prior to the reissue.[7] And Section 252 gives appellant an absolute right to continue using it without regard to the extent of its use prior to reissue, and subject only to the requirement that *its use does not infringe an original valid claim which was carried over into the reissue.* The only original claim which appellee has urged was infringed is Claim 19, but that claim was abandoned without appeal in the prosecution of the reissue application and cannot be considered here as a claim carried over into the reissue. Accordingly, the judgment of the court below to the extent that it denied appellant the right to continue using the accused machine must be reversed.

5. See Walker on Patents, Deller's Ed., Vol. 2, p. 1395.

6. See P. J. Federico, Commentary on the New Patent Act, U.S.C.A., Title 35, p. 1, preceding Section 1.

7. The machine was modified slightly after the reissue but such changes which were primarily to increase the speed of the machine were not material and do not warrant a finding that the machine was "made or purchased" after the reissue.

This brings us to a consideration of appellant's contention that the reissue patent and the claims in suit are invalid. The trial judge found that appellee's machine is substantially the same as the patent in suit and its method is the same as the patent method, and that the patent teaches for the first time a new combination of elements producing a new and useful result. On the basis of these and other findings of fact he concluded that minor discrepancies in the patent drawings do not invalidate the patent; that the patent fully complies with the law as to patent disclosures by disclosing the best method of practicing the invention; and finally, that Claims 20, 23, 24 and 25 of the reissue patent are valid and are not invalid over any of the twenty-one prior art patents cited by appellant or for defining a method or means for producing an unstable article. Claim 20 is an apparatus claim reading as follows:

"20. Apparatus for applying to and folding transversely about an endless flexible flat band an elongated wrapping strip extending along the band comprising means advancing longitudinally the band and strip in face-to-face relation *including opposed pinch rolls* pressing the opposed flat faces of the band and strip directly together and *strip folding means* separate from the pinch rolls acting on the strip to fold it about the band as the band and strip are advanced together therethrough, *mounting means* and a *connection between the mounting means and the strip folding means* movably mounting the strip folding means on the mounting means *providing for lateral opening of the strip folding means* to permit introduction thereinto of the endless band at the beginning of the operation and removal of the wrapped endless band at the conclusion thereof."

The remaining claims, which are set forth in the margin,[8] are method claims

8. "23. In a method of wrapping an endless flexible flat band having cutting means at one edge thereof, the steps comprising disposing a portion of the band in a wrapping path, also disposing in the wrapping path a portion of a wrapping strip wider than the band with said portion of the band and said portion of the wrapping strip in face-to-face contact, pressing the flat faces of the band and wrapping strip together and advancing the band and wrapping strip lengthwise through force applied between the inside and the outside of the band generally in a plane normal to the band and wrapping strip until the length of wrapping strip thus advanced is at least substantially equal to the circumferential length of the band so that the wrapping strip at least approximately overlaps itself and in the wrapping path progressively folding the wrapping strip about the band during such advance.

"24. In a method of wrapping an endless flexible flat band having cutting means at one edge thereof the steps comprising introducing laterally into a wrapping path a portion of the band, introducing longitudinally into the wrapping path the leading end of an elongated wrapping strip wider than the band with said portion of the band and the leading end of the wrapping strip in face-to-face contact, pressing the flat faces of the band and wrapping strip together and applying tractive force to the band and wrapping strip between the inside and the outside of the band generally in a plane normal to the band and wrapping strip and thereby advancing the band and wrapping strip lengthwise until the length of wrapping strip thus advanced is at least substantially equal to the circumferential length of the band, in the wrapping path progressively folding the wrapping strip about the band during such advance and withdrawing laterally from the wrapping path the portion of the wrapped band disposed in the wrapping path upon completion of the wrapping.

"25. In a method of wrapping an endless flexible flat band having cutting means at one edge thereof, the steps comprising disposing a portion of the band in a substantially straight wrapping path, also disposing in the wrapping path a portion of a wrapping strip wider than the band with said portion of the band and said portion of the wrapping strip in face-to-face contact, pressing the flat faces of the band and wrapping strip together and advancing the band and wrapping strip lengthwise through force ap-

which define substantially the same method though in different words.

On this appeal, appellant contends that the reissue patent is invalid as to the claims in suit for the reasons that they contain new matter and are to a different invention than that disclosed in the original patent, and that they are anticipated by the prior art and obvious to a person skilled in such art.

We have carefully considered the issue of the validity of the patent in suit, but our interpretation of the prior art, the physical exhibits and the testimony compels us to agree with the district court's conclusion that the patent is valid. We think it plain that appellant has failed to overcome the presumption of validity which attached to the patent claim. 35 U.S.C.A. § 282.

The evidence here shows that the changes made in the reissue patent were solely for the purpose of clarification, amplification, expression of a more general aspect of the invention, and for alternative expression or for correction of unclear language. Each of the elements of the invention referred to in the reissue claims was in fact disclosed by the original patent and the reissue patent did not involve any new idea or disclosure. The reissue claims simply gave a more adequate description of the invention, enlarged the claims to some extent, but did not enlarge the invention by changing, adding or deleting its elements.

No useful purpose would be served by unduly lengthening this opinion with a detailed discussion of the divergencies in purpose, structure and mode of operation of all of the various prior art patents that have been cited.[9] We deem it sufficient to say that while the patent in suit calls for a combination of old elements which can be found in some of these prior art patents: (1) means for pulling or advancing the article and wrapping paper, (2) folding means for turning the edges of the paper around the edges of the article, and (3) mounting means so that the folding means can be opened for inserting and removing an endless article, we are in agreement with the trial judge that the reissue patent produces for the first time a new combination of elements which produces a new and useful result, i. e. the wrapping of band saw blades or endless, flexible flat articles.

On the issue of infringement the trial court found that the patent in suit is a pioneer patent and has advanced the state of the art of wrapping endless, flexible flat articles such as band saw blades; that appellant's machine and method are in all respects the same as the patented machine and method, although the machines differ in form; that the differences in form are not differences which reflect a departure by the appellant from the invention of the patent in suit; that the accused apparatus responds completely in terms and substance to reissue patent Claim 20; and that appellant's method similarly responds completely to Claims 23, 24 and 25 of the reissue patent. From these and other findings of fact the trial court concluded as a matter of law that the patent was entitled to a liberal construction and a broad and liberal range of equivalence, and is not to be limited to the precise device and instrumentality disclosed; and that the four reissue claims in suit had been infringed.

■■■ Appellant contends that the patent in suit is not a pioneer patent

plied between the inside and the outside of the band generally in a plane normal to the band and wrapping strip until the length of wrapping strip thus advanced is at least substantially equal to the circumferential length of the band so that the wrapping strip at least approximately overlaps itself and in the wrapping path progressively folding the wrap-

ping strip about the band during such advance."

9. Among such patents in evidence are Dunlop, British Patent No. 327,229 for wrapping rims for vehicles or curvilinear lengths of metal and Bindszus Patent No. 2,276,282 for a razor blade wrapping machine.

and thus is not entitled to liberal construction; that the reissue claims are restricted by the prior art and by their prosecution histories so that they cannot be construed as broad enough to include the accused machine and its operation; and that the accused machine and its operation does not have or employ the parts or steps of the patent machine and process or equivalents thereof, but rather follows the prior art and therefore does not infringe any of the claims of the reissue patent. On the record before us, which we have carefully examined, we cannot agree with the trial judge that the patent in suit is a true "pioneer" patent. As we understand the law of patents, a pioneer invention is one which performs a function never performed by an earlier invention. Conspicuous examples of pioneer patents are those to Howe of the sewing machine, to Morse of the electrical telegraph and to Bell of the telephone. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 561, 18 S.Ct. 707, 42 L.Ed. 1136. In the instant case, the invention is neither a pioneer nor an improvement so slight as to be almost immaterial. Instead, we are constrained to agree with the trial court that in the light of prior wrapping devices this invention is one of such novelty and importance as to mark a distinct step in the progress of the art, and it is a primary patent in the sense that it was the first device to wrap band saw blades or any endless, flexible flat article. With respect to infringement, the law gives an inventor a range of equivalents commensurate with the scope of his invention, and as applied to the facts at bar the law entitles appellee a liberal treatment to range of equivalents in view of the meritorious improvement which was made by the patent in suit. Appellant's additional arguments in favor of a limited or narrow construction have been considered but do not merit discussion in the light of what we have just said.

We also agree with the trial court that appellant's machine and method are in all material respects the same as the patented machine and method, and that such differences as exist do not avoid infringement. The record shows that the preferred embodiment of the invention includes a table adapted to support the endless flexible band on edge, and a means for advancing the band together with the paper wrapping strip along a predetermined wrapping path. It is clear from the description of the patent that it consists of a specific combination of (1) strip folding means which are openable to permit introduction of the band and removal of the wrapped endless band, together with (2) opposed pinch rolls acting upon the flat faces of the band and wrapping strip so that as the pinch rolls advance or move the band and wrapping strip along the wrapping path, the folding means act on the wrapping strip to fold it about the band. The folding is accomplished during the progress or movement of the wrapping strip and band through the wrapping path and is not limited to folding of first one and then the other edge of the wrapping strip in separate successive steps.

Claim 20 can be read in express terms upon the accused device. The endless flexible band on the accused machine is disposed vertically, the paper strip is brought against the inner side of the band, and the two edges of the paper strip are turned up at the same time about both edges of the band. Both edges of the paper strip are then folded to overlap at the outside of the band by folding devices which can be opened in order to permit insertion of the band and the removal of the wrapped band. The trial court found and we agree that the fact that the preferred embodiment is accomplished by disposing the band in a generally horizontal plane does not limit the invention to such disposition. The principal difference between a horizontal and a vertical embodiment is found to be in the detailed structure of the folding means, but in either case, the wrapping strip will be wrapped about the band longitudinally in a predetermined wrapping path as the band and

strip are advanced by pinch rolls acting against the flat surfaces of the band. The fact that in the accused machine both sides of the wrapping strip are folded over the band simultaneously does not avoid the invention on the claims of the patent in suit. It is well settled that infringement exists only when the accused device and the teachings of the patent in suit are substantially identical in structure, mode of operation and results accomplished. Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645. Here, from a comparison of the patent invention with the accused machine, we are of opinion that the two structures exhibit no substantial difference in physical structure, or any obvious departure in basic principle or mode of operation. We therefore conclude as did the trial court that these differences between the machine of the patent and appellant's machine are not differences which depart either in terms or in substance from the claims in suit. Appellant accomplishes exactly the results of the patent by exactly equivalent means and in exactly the same way, merely changing the form of certain elements whose specific form is not a limitation of the invention.

In view of our decision above that the degree of use is immaterial to appellant's claim of intervening rights, we deem it unnecessary to rule on appellant's objections to the trial court's rulings in respect to certain evidence, since all of the evidence objected to and conclusions drawn therefrom pertained solely to the issue of extensiveness of use of the accused machine prior to reissue of the patent in suit, and the admission or rejection of this evidence could not possibly affect the result.

For the reasons stated, the judgment should be modified so as to hold that Southern Saw Service, Inc. has intervening rights and is entitled to the continued use of the accused machine, and as thus modified the judgment is affirmed.

Modified and affirmed.

HUTCHESON, Chief Judge (concurring in part and dissenting in part).

Of the opinion that the judgment should be affirmed as written, I dissent from its modification so as to provide that appellant "has intervening rights and is entitled to the continued use of the accused machine".

Because, aside from this, I find myself in complete agreement with the excellent opinion of the majority, I think it desirable to precisely state the point of difference between us and to briefly give my reasons therefor.

I agree with the view of the majority that "the question of intervening rights should and must be resolved under Section 252 of the 1952 Patent Act". I agree, too, with its view that the district judge erred in reading the word "or" in the provision "to continue the use of the specific thing so made, purchased, or used", as "and", as I agree with its view that "Claim 19 of the original patent does not constitute a barrier to defendant's claim of intervening rights."

I nevertheless disagree with the ultimate conclusion that "Section 252 gives appellant an absolute right to continue using [the accused machine] without regard to the extent of its use prior to reissue". This is so because it is my view that the statute, in line with decisional law under Sec. 64 of the earlier statute remits the matter to the discretion of the court "before which such matter is in question", for determination by it upon equitable considerations, and the undisputed evidence, particularly the testimony of Anderson, defendant's president, establishes conclusively that there is no basis here for the claim of equitable rights.

On Petition for Rehearing

PER CURIAM.

As neither of the judges who concurred in the decision of the Court in the above numbered and entitled cause is of opinion that the petition for re-

hearing should be granted, it is ordered that the said petition be, and the same hereby is, denied.

HUTCHESON, Chief Judge, dissenting.