321 F.2d 90
 Isaac ROTHSTEIN, d/b/a Old Fashion Ma's Root Beer Bottling Company, Appellant,
v.
ATLANTA PAPER COMPANY and Mead-Atlanta Paper Company, Appellees.
ATLANTA PAPER COMPANY and Mead-Atlanta Paper Company, Appellees,
v.
Isaac ROTHSTEIN, d/b/a Old Fashion Ma's Root Beer Bottling Company, Appellant.
 No. 19557.
 United States Court of Appeals Fifth Circuit.
 July 30, 1963.
 
 George V. Woodling, Cleveland, Ohio, Pierre Howard, Atlanta, Ga., Sidney A. Eisenberg, Cleveland, Ohio, for appellant.
 Ernest P. Rogers, Walter M. Rodgers, Jr., Smith, Kilpatrick, Cody, Rogers & McClatchey, Miles J. Alexander, Atlanta, Ga., for appellees-appellants (defendants), Lawrence Biebel, Marechal, Biebel, French & Bugg, Dayton, Ohio, of counsel.
 Before JONES and BELL, Circuit Judges and GROOMS, District Judge.
 GRIFFIN B. BELL, Circuit Judge.
 
 
 1
 Appellant is the owner, as assignee from his brother, of United States Letters Patent No. 2,371,471. He brought this action for an alleged breach of a license agreement under that patent. Appellee[1] counterclaimed alleging violation of a more favored terms clause in the license agreement, claiming retrospective application and a refund. The District Court entered judgment for appellee on the main claim, holding that the agreement had not been breached. Judgment was rendered against appellee on the counterclaim, except to the extent that appellee was entitled to the more favorable terms accorded another licensee by appellant from the date of that license to the expiration of the patent in suit upon the payment of the lump sum paid by the licensee under that agreement. Each party appealed from the adverse portions of the judgment.
 
 I.
 
 2
 Appellant has been engaged for more than twenty five years in the bottling and sale of soft drinks, and in the manufacture and sale of extracts for use by other bottlers who are licensed by appellant to bottle and sell beverages under his trademarks, the principal one of which is "Old Fashion Ma's", for root beer.
 
 
 3
 Atlanta Paper and its successor, Mead-Atlanta have been engaged on a large scale for many years in the manufacture and sale of carry-home cartons or containers for the beverage industry. The carriers are of several types, some being designed for carrying two bottles and others for four, six, eight, and twelve bottles. The six bottle carrier is the most widely used. Two bottle carrier sales are very small in comparison to the sales of the other type carriers. The issues here, at the instance of appellant, are limited to a claim for royalties under the license agreement on those cartons or carriers of appellee for six and eight bottles of varying sizes marketed under the trade name "Bottle Master".
 
 
 4
 Appellant from 1950 into the year 1957 was a customer of appellee, purchasing six bottle carriers for his use and for the use of his licensed bottlers. In 1952 appellant advised appellee as follows:
 
 
 5
 "We are the Holders of patents granted to us by the Federal Government covering a two (2) bottle carrier for large bottles. This patent is registered, serial #2,371,471, with the U. S. Bureau of Patents.
 
 
 6
 "It has come to our attention recently that you are infringing on the patent we hold and are selling and distributing a carton carrier in violation of our patent. * * *"
 
 
 7
 After some demurring, a license agreement was worked out between counsel for the parties. Counsel for appellant, in response to a contention from counsel for appellee that its competitors would not be paying royalty on such carriers, offered the assurance that all others would be pursued, and that any license agreement with appellee would carry a provision assuring that no one would have a competitive advantage. The license agreement was entered into as of February 10, 1954 to be effective from January 1, 1954 through the balance of the term of the patent which expired on March 13, 1962. The agreement, in pertinent part, was prepared by Mr. Rosenn, counsel for appellant, and provides:
 
 
 8
 "1. Rothstein hereby grants unto Atlanta a non-exclusive right and license to manufacture, use and sell, throughout the United States of America, bottle carriers, hereinafter referred to as `licensed bottle carriers', embodying the invention claimed in said Letters Patent No. 2,371,471 and any reissues and extensions thereof, said right and license to continue for the entire term of said letters patent, subject to earlier cancellation as hereinafter set forth.
 
 
 9
 "2. Atlanta agrees to pay Rothstein, from and after January 1, 1954, as royalties or license fee, three per cent (3%) of Atlanta's net selling price of licensed bottle carriers. * * *
 
 
 10
 * * * * * *
 
 
 11
 "4. Atlanta agrees to cause to be fixed, stamped, or printed on every licensed bottle carrier manufactured hereunder, the words and figures `Patent No. 2,371,471.'
 
 
 12
 * * * * * *
 
 
 13
 "6. Atlanta shall at no time during the life of this agreement dispute or raise any objection to the validity of said letters patent.
 
 
 14
 * * * * * *
 
 
 15
 "8. Insofar as Rothstein and Patent No. 2,371,471 are concerned, Atlanta shall be entitled to be in as favorable a position as any other manufacturer or seller of bottle carriers, wherefore any more favorable terms or conditions as to royalties that have been or hereafter may be granted to others who are licensed under said patent automatically shall become available to Atlanta and shall supplant the provisions of paragraphs 2 and 3 hereof. The decision of a Court of competent jurisdiction that said patent is invalid or non-enforceable shall entitle Atlanta to surrender its license and terminate this agreement."
 
 
 16
 It is to be noted that the license agreement is not limited to two bottle carriers although no other type carrier was discussed. Some months after the license agreement became effective appellant audited the books of appellee and found three small discrepancies on two bottle carriers; otherwise, royalty payments were made as agreed.
 
 
 17
 On September 26, 1956 appellee received a letter from a new attorney for appellant, Mr. Langsam, to the effect he was representing Mr. Rothstein and that claims 1 and 4 of the patent in suit were sufficiently broad in scope to cover the four and six bottle carriers being manufactured by appellee. He claimed royalties on the manufacture and sale of all such carriers.[2] Counsel for appellee, instead of responding to this letter, wrote appellant's regular attorney, Mr. Rosenn, with whom the license agreement had been negotiated, complaining of the position being urged by the new attorney, recalling the fact that the license had been negotiated and consummated in the light of appellant's position that the patent was on a two bottle carrier, and sought an explanation of the change in position. No reply to this letter was ever received although Mr. Rosenn was still counsel for Mr. Rothstein at that time and selected Mr. Langsam as patent counsel. Mr. Rothstein testified that Mr. Rosenn showed him the letter from appellee's counsel but did not say when. He did say that there was no reason to answer it.
 
 
 18
 Nothing further was heard from appellant or his lawyers until slightly more than a year later when appellee received a letter from still another attorney, present counsel, under date of November 5, 1957. They took the same position without reference to the Langsam letter and without specification as to claims. In the meantime, royalty payments by appellee on the basis of two bottle carriers, and purchases by appellant of larger carriers from appellee had continued. Counsel for Atlanta responded to this communication by twice writing Mr. Rosenn with no response other than from his secretary after the second letter to the effect that Mr. Rosenn was on vacation.
 
 
 19
 At any rate, the lawyers for the parties then met in Atlanta in December 1957. There was no change in position. Appellant's lawyers were asked about the settlement of an infringement action which had been brought on the same patent against Container Corporation of America. They refused to disclose the basis of the settlement of that case.
 
 
 20
 They met again in February 1958 and counsel for Mead-Atlanta was at that time given a copy of the agreement between appellant and Container Corporation. It reflected that the infringement suit had been settled and compromised on the basis of a release for past infringement and a paid up non-exclusive license under the patent, all for the sum of $8,000. It provided as follows:
 
 
 21
 "1. ROTHSTEIN hereby grants unto CONTAINER a non-exclusive right and license to manufacture, use and sell, throughout the United States of America, and for export, bottle carriers embodying the invention disclosed and claimed in said Letters Patent No. 2,371,471, and any re-issues and extensions thereof, said right and license to continue for the entire term of said letters patent and of any reissue or extension thereof; said right and license shall include all bottle carriers under one or more claims of said letters patent whether for two or more bottles.
 
 
 22
 "2. ROTHSTEIN, individually and trading as Old Fashion Ma's Root Beer Bottling Company, hereby releases CONTAINER from any and all claims for infringement of said letters patent occurring prior to the date hereof, and has delivered to CONTAINER a separate instrument with the same effect."
 
 
 23
 Appellee then learned through the medium of taking appellant's deposition that he had no information as to prior sales by Container Corporation, and thereafter appellee took the position that the $8,000 payment covered the full term of the patent. It claimed identical treatment with the result that it would be refunded all sums theretofore paid as royalty over and above $8,000. The failure of appellant to accede to this position was followed by the filing of the counterclaim on the same basis, this suit having already been filed.
 
 II.
 
 24
 The issues are narrowed to three. First, do claims two and three of the patent embody the six and eight bottle carriers manufactured and sold by Mead-Atlanta so as to make them subject to the license agreement? If so, is appellant completely or partially estopped by past events and conduct from recovery? Lastly, to what extent, if any, is appellee entitled to the benefit of the settlement terms between appellant and the Container Corporation? In the view we take of the case, only the first and last issues need be resolved.[3]
 
 III.
 
 25
 The patent in issue, No. 2,371,471 relates to a bottle carrier with a central handhold for carrying purposes situated at the top of a dividing wall between one bottle compartments on each side of the dividing wall. One object of the invention was to provide a carrier that could be collapsed flat without disconnecting any parts so that it might be conveniently stored, shipped or otherwise handled. Another object was to provide a strong and durable carrier and handhold that could be inexpensively manufactured from heavy paper or cardboard.
 
 
 26
 Appellant apparently has not utilized the invention except to license others under it. Our understanding of the device of the patent is based on the teaching of the patent, studies of the two bottle carrier made under it by appellee and the four bottle carrier made under it by another licensee. The claims involved, two and three, are printed in the margin.[4]
 
 
 27
 In essence, the device of the patent is to be made up from an elongated blank having a central portion forming the base on which two large bottles, one on each side of the dividing wall, are to rest upright, with extensions from the base to form end and side walls of the carrier when set up in the folded or finished position. The blank is variously creased to emphasize the folds which form the elements of the set up carton or carrier. One of the folds in the extension from one end of the base comes together in the setting up process in face to face contact with a fold in the extension from the opposite end of the base to form together the inner wall which separates the two single bottle compartments. These folds are longer in length than the other folds and the additional length provides the necessary height and space when set up for a cut out handhold.
 
 
 28
 It is the position of appellant that his claims are not limited to two bottle carriers, and that appellee's larger carriers embody these two claims in that they are the two bottle design on a larger scale, with separation strips being added between the additional bottles to be carried on each side of the cartons.
 
 
 29
 The license agreement provides that appellee shall at no time dispute or raise any objection to the validity of the patent. We do not construe this to proscribe a construction of the patent as it may apply to the larger bottle carriers of appellee here involved. And the construction or application of the claims in determining whether they read on the accused carriers brings the prior art into consideration. See Baldwin Rubber Co. v. Paine & Williams Co., 6 Cir., 1938, 99 F.2d 1; and cf. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316. This is so because the claims do not read literally on the accused carriers, and we must determine the range of equivalents to be accorded the claims. This depends on the scope of the invention. Up-Right, Inc. v. Safway Products, Inc., 5 Cir., 1963, 315 F.2d 23; and Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corporation, 5 Cir., 1956, 239 F.2d 339. And we approach the issue presented with the question of validity eliminated, and with the range of equivalents question limited to the accused carriers.
 
 
 30
 The record demonstrates that collapsible bottle carriers made from heavy paper or cardboard blanks with handholds in the central wall are old in the art. See, among others, Letters Patent No. 1,799,657 dated April 7, 1931 and issued to Edward O. Tinsley; No. 2,239,564 dated April 22, 1941, issued to Joseph L. Lyons, Jr.; No. 2,273,266 dated February 17, 1942, issued to Ross A. Himes; No. 2,302,677 dated November 24, 1942, issued to W. B. Crane; No. 2,319,380 dated May 18, 1943, issued to W. J. Wells; and No. 2,322,396 dated June 22, 1943, and issued to J. B. Slevin, Jr. These patents all pre-dated the patent in suit which issued on March 13, 1945. In this background or context, we hold that the claims of the patent in suit have no basic or pioneer aspects over the prior art.
 
 
 31
 The two bottle carriers made by appellee do not carry its trademark "Bottle Master". They are made by following the teaching of the patent in suit. The finished carton is in the form of two equal size compartments placed together, face to face or back to back, on the high side of each, with the high sides, as glued together, making the dividing wall between the carton formed from the compartments, and with the upper portion of the dividing wall having a cutout handhold. This size carton carried notice of appellant's patent on the under side of the base section. Such notice does not appear on the accused carriers, but notice is given of patent No. 2,537,452 issued January 9, 1951 to H. W. Forrer and assigned to Atlanta Paper Company.
 
 
 32
 The accused carriers are similar in that they are both made in collapsible form from blanks. They are similar in that they are bottle carriers with integrated handholds, although the accused carriers are designed to carry more than two bottles. From this point on the differences take over. The folding process of the blank of the patent is from the base with the opposite or handle end being open. The folding process of the accused device is from the handle end with the base section being open. In the former the base is in the center of the blank; in the latter the handle is in the center of the blank. The outer sides of the accused carriers have strips along the top which go into place as bottle separators or compartment dividers in the set up carton.
 
 
 33
 But the major difference is in the handhold and dividing wall section of the accused carriers. Rather than being of solid construction and comprised of two pieces face to face as the patent in suit teaches, there is no solid center wall in the accused carriers. The handhold section serves to separate the multiple bottle compartments. And the handhold section consists of two sides of a fold in face to face relation telescoped between two sides of another fold, and this is accomplished in the over-all setting up process. This follows the clear teaching of the Forrer patent, No. 2,537,452. It is not taught by the patent in suit. It is the final result of a different blank and folding process in an old and crowded art.
 
 
 34
 The doctrine of equivalents is based on substantial identity between the teachings of the claims of the patent in suit and the accused device in structure, mode of operation and result to be accomplished, and that doctrine will not save appellant. That substantial identity is missing when measured against the narrow range to which his patent is entitled. Appellee simply did not utilize the teaching of the patent in suit. Thus it is that the accused carriers did not embody the invention claimed by appellant as the license required before royalty payments would be due. The claims in suit do not read on appellee's six and eight bottle carriers being marketed under the name "Bottle Master". They differ in principle, structure and mode of operation with regard to the handhold section, the folding process, and in the design of the blank. See Kokomo Fence Machine Co. v. Kitselman, 1903, 189 U.S. 8, 23 S.Ct. 521, 47 L.Ed. 689; Edwards v. Johnston Formation Testing Co., 5 Cir., 1932, 56 F.2d 49; Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 1952, 195 F.2d 645 and Industrial Instrument Corporation v. Foxboro Company, 5 Cir., 1962, 307 F.2d 783. The holding of the District Court that the patent license agreement had not been breached was correct.
 
 
 35
 As to question regarding the most favored terms clause of the license agreement, the letter of June 25, 1958 to appellant claiming the treatment given Container Corporation was an adequate election under the circumstances. The fact that there was disagreement between the parties as to the scope of the treatment accorded Container Corporation does not militate against the fact that appellee sought that treatment if in fact it was more favorable. Although not entirely clear from the provisions of paragraph 8 of the license agreement, the more favored terms clause, we hold that it does not operate retrospectively. More favored terms were to be "automatically" available, and were to supplant present paragraphs 2 and 3. They had only to do with royalty payments. The word "automatically" also appears in paragraph 12 to include improvements in the invention. They, of course, could not be afforded retrospectively. The fact that appellee was to be saved from a competitive disadvantage does not indicate a different result. Appellee was the second licensee and was under a competitive disadvantage until others were licensed. Stated differently, there was a built-in gap until others were licensed. The only reasonable construction of the terms of this clause is that it was to be operative and effective, subject to adjustment forward from the date of more favorable terms as to royalty being extended to another, if appellee so elected. Appellee failed to carry the burden of showing to the contrary. No controlling authority has been cited by either party, but the question turns on the language used and the scales tip in favor of appellant.
 
 IV.
 
 36
 As it turns out then, because of our holding on the scope of the claims of the patent and the more favored terms clause, the $8,000 payment will be important to appellee only as respects a license from December 6, 1957 through the end of the term of the patent on two bottle carriers made under the patent. It may nevertheless now claim that treatment upon paying the sum of $8,000 together with legal interest thereon from December 6, 1957 to the date that it is paid, but with a credit for or a refund of such sums as have been paid by way of royalties since December 6, 1957.
 
 
 37
 The case must be remanded for the purposes of this election in line with paragraph (3) of the District Court judgment; otherwise, the judgment appealed from is affirmed both as to the appeal and cross-appeal. Each party shall bear its own costs.
 
 
 38
 Affirmed, and as affirmed remanded with instructions.
 
 
 
 Notes:
 
 
 [1]
 The complaint was filed against Atlanta Paper Company, a Georgia Corporation and Mead-Atlanta Paper Company, an Ohio Corporation. Mead-Atlanta acquired the assets and business of Atlanta Paper and assumed any liabilities of Atlanta. They will be referred in the singular, or as Mead-Atlanta
 
 
 [2]
 It should also be noted that this suit proceeded on the basis of claims two and three of the patent, instead of claims one and four as asserted in this letter, and the claim for the four bottle carrier has been withdrawn
 
 
 [3]
 Appellant contends that the question of estoppel is not properly before the court. He did not appeal from the alternative holding that he was estopped up to the date of the Langsam letter, September 25, 1956. The question of estoppel to a later date, such as to the time of the November 1957 letter, is here as a part of the cross-appeal on the scope of the terms extended to Container Corporation. With the parties in disagreement as to just what those terms embraced, and with the patent question and the question of estoppel outstanding, appellee might well be in doubt as to whether those terms were more favorable. However, we do not reach the estoppel question
 
 
 [4]
 "2. A bottle carrier formed from a paper blank comprising a base section 5, 5 of an area for receiving thereon two bottles, and an end extension 8, 11, 13, 14 at each end of said base section, each said end extension being foldable uprightly relative to the base section to form an end wall 8 and including lateral side wall extensions 11, 11 foldable into parallel spaced relation to form bottle embracing side walls 11, 11 and two wall portions 13, 13 foldable in face to face contact to form a hand hold portion, said two hand hold forming wall portions 13, 13 when secured together in face to face contact forming a hand hold and a division wall for separating bottles supported on said base portion
 "3. A bottle carrier formed from a paper blank comprising a base section 5, 5 of an area for receiving thereon two bottles, and an end extension 8, 11, 13, 14 at each end of said base section, each said end extension being foldable uprightly relative to the base section to form an end wall 8 and including lateral side wall extensions 11, 11 foldable into parallel spaced relation to form bottle embracing side walls 11, 11 and two wall portions 13, 13 foldable in face to face contact to form a hand hold portion, said two wall portions 13, 13 forming endwise extensions of said two side wall extensions 11, 11 in the blank and being separated therefrom by cross slitting 12, 12, and there being included a reinforcing flap 14 extending along and connecting each of said two wall portions 13, 13 and the associated one of the two other side wall extensions 11, 11, and said two hand hold portions when secured together in face to face contact forming a hand hold and a division wall for separating bottles supported on said base portion with the reinforcing flaps 14 folded into and forming a part of said division wall."